KYRA A. KAZANTZIS (SBN: 154612) / kyrak@lawfoundation.org
ANNETTE D. KIRKHAM (SBN: 217958) / annettek@lawfoundation.org
DIANA E. CASTILLO (SBN: 237281) / dianac@lawfoundation.org
THOMAS P. ZITO (SBN: 304629) / tom.zito@lawfoundation.org
MATTHEW WARREN (SBN: 305422) / matthew.warren@lawfoundation.org
LAW FOUNDATION OF SILICON VALLEY
FAIR HOUSING LAW PROJECT
152 North Third Street, 3rd Floor
San Jose, CA 95112
Telephone: (408) 280-2411
Facsimile: (408) 293-0106

Attorneys for Plaintiffs ISMAEL JIMENEZ, YOLANDA JIMENEZ, ANGELES JIMENEZ, ANTONIO JIMENEZ, CARMENTINA HERRERA, LUIS ALVAREZ, EBARISTO ALAVEZ, JOSEFA JIMENEZ, JESUCITA ORTIZ, RODOLFO ROBLES, and PROJECT SENTINEL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ISMAEL JIMENEZ, YOLANDA JIMENEZ, ANGELES JIMENEZ, ANTONIO JIMENEZ, CARMENTINA HERRERA, LUIS ALVAREZ, EBARISTO ALAVEZ, JOSEFA JIMENEZ, JESUCITA ORTIZ, RODOLFO ROBLES, and PROJECT SENTINEL, a California non-profit corporation, on behalf of itself and the general public,<br><br>      Plaintiffs,<br><br>      v.<br><br>DAVID TSAI, UNDINE TSAI, and TZEAN SHEN,<br><br>      Defendants. | **Case No.**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL FAIR HOUSING ACT, CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, UNRUH ACT, BREACH OF QUIET ENJOYMENT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF WARRANTY OF HABITABILITY, RETALIATION, AND NEGLIGENCE**<br><br>**[42 U.S.C § 3601, et seq.; Cal. Gov't Code 12955 et seq.; Cal. Civ. Code § 51; Cal. Civ. Code § 1927; Cal. Civ. Code § 1942.5]**<br><br>**DEMAND FOR JURY TRIAL** |

# I.    **INTRODUCTION**

1.      The Plaintiffs are four low-income Latino families who have endured years of mistreatment at the hands of their landlords, the Defendants in this action.  Since at least 2008, Defendant landlords have leased poor quality housing in two Gilroy apartment complexes almost exclusively to impoverished Latino families who have few other housing options.  Renting to Latino families who desperately fear retaliatory eviction because of their limited economic capacity and movability in an extremely tight housing market has allowed the Defendant landlords to avoid their responsibility to repair and maintain the premises in a safe and sanitary condition and to harass and intimidate children.

2.      The Plaintiffs have long endured no heat, sewage backups, dangerous electrical problems, and infestations of rats, roaches and bedbugs.  Despite knowing these unhealthy and unsafe conditions, Defendant owners David and Undine Tsai and Defendant property manager Tzean Shen ignored Plaintiffs' numerous requests to repair these significant problems.  Defendants' failure to repair these problems is part of a pattern of discrimination against Latino families, made evident by their leasing of well-kept and well-repaired residential units to non-Latino families at their rental property in Cupertino.

3.      Defendants have also engaged in an ongoing practice of intimidating child residents of the two complexes to prevent them from playing outside.  The property manager of the two complexes has repeatedly instructed children not to play outside, yelled at children for playing outside, taken their toy balls, adopted discriminatory rules against playing, and even nailed shut tenants' own private yard gates to prevent children from exiting to play in common areas.  Defendants have created such a hostile environment that when children playing outside see the property manager, the children retreat indoors out of fear.  Families with children are unable to fully enjoy the place where they live.

4.      Because of the harm that they have suffered, Plaintiffs Ismael Jimenez, Yolanda Jimenez, Angeles Jimenez, Antonio Jimenez, Carmentina Herrera, Luis Alvarez, Ebaristo Alavez, Josefa Jimenez, Jesucita Ortiz, and Rodolfo Robles bring this action on behalf of themselves and their minor children for damages and injunctive relief to force Defendant

landlords to make needed repairs and to cease discriminating against children. Plaintiff Project Sentinel, Inc., a non-profit organization that expended significant resources in investigating Plaintiffs' complaints, brings this action for damages, injunctive relief, and declaratory relief on behalf of itself and the general public.

## II.     JURISDICTION AND VENUE

5.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims, because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of operative facts. Plaintiffs' state law claims for violations of California's Fair Employment and Housing Act, the Unruh Civil Rights Act, breach of quiet enjoyment, breach of covenant of good faith and fair dealing, breach of warranty of habitability, and negligence are related to Plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) in that the unlawful conduct that gives rise to these claims occurred within the Northern District of California.

## III.     INTRADISTRICT ASSIGNMENT

7.      Intradistrict assignment in San Jose is proper pursuant to Local Rule 3-2 because the unlawful conduct that gives rise to these claims occurred in Santa Clara County, California.

## IV.     PARTIES

**A.     Tenant Plaintiffs**

**Jimenez Family**

8.      Plaintiffs Ismael Jimenez, Yolanda Jimenez, Antonio Jimenez, Angeles Jimenez, and Angeles' two children (N.J. and S.J., ages 14 and 8, respectively) are all residents at 590 Stoney Court, Apt. No. 101-C, in Gilroy, California. They have lived there since approximately November 2008. They all identify as Latino and are of Mexican descent.

**Herrera Family**

9.      Carmentina Herrera and her adult son Luis Alvarez live with her other children (B.A., S.A., and A.A., ages 16, 15, and 12, respectively) at 590 Stoney Court, Apt. No. 202-B in Gilroy, California.  They have lived there since February 2015.  They all identify as Latino and are of Mexican descent.

**Alavez-Jimenez Family**

10.      Ebaristo Alavez, Josefa Jimenez, and their children (G.A., J.A., D.A., C.A., and A.A., ages 17, 14, 12, 8, and 6, respectively) are residents at 590 Stoney Court, Apt. No. 103-B in Gilroy, California.  They have lived there since November 2008.  They all identify as Latino and are of Mexican descent.

**Ortiz-Robles Family**

11.      Jesucita Ortiz, Rodolfo Robles, and their children (E.R., E.R., J.D.R., L.R., and A.R., ages 14, 12, 10, 7, and 6, respectively) are residents at 611 E. 7th Street, Apt. No. 5, in Gilroy, California.  They have lived there since October 2009.  Ms. Ortiz and Mr. Robles identify as Latino and are of Mexican descent.

**B.      Project Sentinel**

12.      Plaintiff Project Sentinel is a non-profit corporation organized under the laws of the State of California with its principal place of business located at 1490 El Camino Real, in Santa Clara, California.  Project Sentinel's mission is to develop and promote fairness and equality of housing for all persons and to advocate peaceful resolution of disputes for community welfare and harmony and one of its specific goals is the elimination of all forms of illegal housing discrimination.  To this end, the activities in which Project Sentinel engages include, but are not limited to:  (1) investigating allegations of discrimination; (2) conducting tests of housing facilities to determine whether equal opportunity in housing is provided; (3) taking such steps as it deems necessary to assure such equal opportunity and to counteract and eliminate discriminatory housing practices; and, (4) providing outreach and education to the community regarding fair housing.

**C.      Defendants**

13.      Defendants David Tsai and Undine Tsai own the rental properties which are the subject of this lawsuit: 590 Stoney Court, in Gilroy, California, and 611 East 7th Street in Gilroy, California (collectively "the Gilroy Complexes").  They have owned the residential rental property at 590 Stoney Court since August 1999, and they have owned the residential rental property at 611 E. 7th Street since October 1995.  Defendants David Tsai and Undine Tsai also own the residential rental properties located at 10160 and 10162 Park Circle West in Cupertino, California.  Mr. and Mrs. Tsai reside in Santa Clara County, California.

14.      On information and belief, Defendant Tzean Shen is the property manager at the Gilroy Complexes. He is also a resident at 611 E. 7th Street in Gilroy, California.  Owners David Tsai and Undine Tsai also actively participate in management of each the Gilroy Complexes and the properties in Cupertino.

15.      At all times relevant herein, Defendants were the agents, servants, and employees of each other; each Defendant was acting within the scope of such agency or employment in doing the things herein alleged, and the alleged acts or omissions of each Defendant were subsequently ratified and adopted by each other.

## V.      LEGAL FRAMEWORK

**A.      FEDERAL LAW**

16.      The Fair Housing Act provides that it is unlawful to discriminate against any person "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith," because of familial status or national origin.  42 U.S.C. § 3604(b).  This provision of the Fair Housing Act makes it unlawful to create or maintain a hostile living environment based on familial status (i.e., the presence of children) and national origin.

17.      The Act also prohibits limiting privileges or the use of facilities associated with a dwelling because of the presence of children.  24 C.F.R. § 100.65(b)(4)[1]; see also, Fair Housing

---

[1]   The United States Department of Housing and Urban Development ("HUD") is charged with implementing rules and regulations governing the enforcement of the Fair Housing Act.

Congress v. Weber, 993 F. Supp. 1286, 1290-93 (C.D. Cal. 1997) (holding that rules barring children's playing in common areas violated the protection of Section 3604(b)); United States v. M. Westland Co., 1995 U.S. Dist. LEXIS 22466 at *4-6 (holding that creation of a hostile environment for a family with a child was part of a violation of the FHA).

18.     The Act also prohibits "[f]ailing or delaying maintenance or repairs of sale or rental dwellings because of . . . national origin." 24 C.F.R. § 100.65(b)(2); see also, Mehta v. Beaconridge Improvement Ass'n, 432 Fed. Appx. 614, 617 (7th Cir. 2011) (upholding a resident's Section 3604(b) claim against his homeowners' association for discriminatory maintenance services).

19.     Where housing providers impose poor conditions or terms on only a particular group protected under fair housing law, courts have found that conduct to constitute a violation of federal fair housing laws on the basis that such actions are predatory or exploitative.  See, e.g., Whitley v. Taylor Bean and Whitaker Mortgage, 607 F. Supp. 2d 885 (N.D. Ill. 2009) (sustaining allegations that plaintiffs were singled out and exploited because of their race and that racial discrimination served as Defendants' intent or motive and that fraud and misrepresentation were the particular means of the exploitation); see also, Hargraves v. Capital City Mortgage Corp., 140 F. Supp. 2d. 7, 11, (D.C. 2000) (holding that that where plaintiffs sufficiently alleged that the terms of defendants loans are unfair and predatory, it was not necessary that the defendants make loans on more favorable terms to anyone other than the targeted class); Contract Buyers League v. F & F Investment, 300 F. Supp. 210, 214-16 (N.D. Ill. 1969) (denying motion to dismiss in civil rights action because plaintiff homebuyers' allegations that defendants sold homes to them "on discriminatory prices and terms" stated claim under the Civil Right Act and rejecting defendant's argument that comparative evidence was required because it would mean injustice would be allowed "so long as it is visited exclusively on negroes").

20.     Housing providers are prohibited by the Act from coercing, intimidating, threatening, or interfering "with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606

of this title." 42 U.S.C. § 3617.  HUD's regulation interpreting section 3617 prohibits "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act."  24 C.F.R. § 100.400(c).

### B.    STATE ANTI-DISCRIMINATION LAW

21.    The California Fair Employment and Housing Act likewise makes it unlawful for a landlord to "discriminate against or harass any person because of the race, color, . . . national origin, ancestry, [or] familial status . . . of that person." Cal. Govt. Code § 12955(a), (d), and (f).

22.    Section 12955.7 of the same Act prohibits landlords from retaliating against a tenant who has complained about discriminatory treatment and from interfering with any person in the exercise of, or on account of that person's exercise of, any right granted or protected by Cal. Govt. Code § 12955.

23.    California's Unruh Civil Rights Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, no matter what their sex, race, color, religion, ancestry, [or], national origin . . . [and] are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(a)

### C.    STATE WARRANTY OF HABITABILITY CLAIMS

24.    Pursuant to the implied warranty of habitability in leases and under state laws (see Cal. Civ. Code section 1941.1) landlords are required to maintain their leased residential dwellings in conditions that are fit for human habitation.  Green v. Superior Ct., 10 Cal. 3d 616, 629 (1974) (holding that a warranty of habitability is implied in all residential rental agreements).  A dwelling shall be deemed uninhabitable if it substantially lacks any of the affirmative standard characteristics prescribed by Civil Code section 1941.1 or is substandard under Cal. Health & Safety Code section 17920.3, for example, lack of adequate heating, dampness of habitable rooms, general dilapidation or improper maintenance, and buildings or portions thereof not provided with adequate exit facilities.

25.    The landlord's duty to provide habitable dwellings is wide-reaching.  It extends beyond a tenant's dwelling, or housing unit, into the common areas, like stairways and hallways.

Given our short housing supply housing and the impracticability of imposing on tenants a duty to inspect their housing, a "tenant's lack of knowledge of defects is not a prerequisite to the landlord's breach of the warranty." Knight v. Hallsthammar, 29 Cal. 3d 46, 54 (1981), citing Green, 10 Cal. at 624-625.  Further, a landlord is not exempt from their duty to provide habitable housing if a tenant continues to live in this housing. Id. at 59.

**D. STATE RETALIATION CLAIMS**

26.     A cause of action for retaliation against a tenant exists under both common and statutory law.  Rich v. Schwab, 63 Cal. App. 4th 803 (1998); Aweeka v. Bonds, 20 Cal. App. 3d 278 (1971); Western Land Office, Inc. v. Cervantes, 175 Cal. App. 3d 724, 735 (Cal. App. 6th Dist. 1985) (California has two parallel and independent sources for the doctrine of retaliatory eviction); Schweiger v. Superior Court of Alameda County, 3 Cal. 3d 507, 517 (Cal. 1970) (recognizing common law defense of retaliatory eviction).

27.     The rights protected include the exercise of any legal right even though the tenant's acts are not covered by the statute.  7 Miller & Starr, Cal. Real Estate (3 ed. 2011), § 19: 225 citing Barela v. Superior Court, 30 Cal. 3d 244, 2480254 (1981).  California Civil Code Section 1942.5 prohibits a landlord from retaliating against a tenant for asserting legally protected rights.  Banuelos v. LA Investment, LLC, 219 Cal. App. 4th 323, 327 (2013).  A landlord may not evict a tenant, increase rent, decrease services, or cause a tenant to move because of that tenant's peaceful and lawful invocation of his or her rights.  Cal. Civ. Code § 1942.5(c).

**VI.     STATEMENT OF FACTS**

28.     Plaintiffs are residents of Las Animas Apartments, a 32-unit apartment complex located at 611 E. 7th Street, and 590 Stoney Court, a 20-unit apartment complex, both in Gilroy, California ("the Gilroy Complexes").  The Gilroy Complexes are near each other.  Defendant Tzean Shen is the property manager for both properties.

29.     In addition to the ongoing failure to repair and maintain livable premises, Defendants maintain a hostile environment for children.  Defendant Tzean Shen regularly tells children not to play outside in the common areas of the complex.  Tenant Plaintiffs have

witnessed Mr. Shen telling children who are playing outside to not play ball and to not ride bikes or scooters. Plaintiffs have also witnessed Defendant Tzean Shen taking away the balls of children playing in the common areas of the complex and keeping them in his own yard space.

30. The children of the Tenant Plaintiffs are afraid of Defendant Tzean Shen because he yells at them for playing outside and tells them to play inside. The children usually retreat indoors with their toys when they see him approach. Some children completely avoid playing outdoors at the Gilroy Complexes in order to avoid Mr. Shen.

31. Defendants maintain two identical signs at 611 E. 7th Street that read, "NO SKATEBOARDING[,] BICYCLE RIDING[,] ROLLERSKATING[,] ROLLERBLADING[,] BALL PLAYING" in order to discourage children from playing outdoors. As far as Plaintiffs are aware, Defendants only enforce these rules against children.

32. All or almost all of the residents of the Gilroy complexes identify as Latino. Plaintiffs allege on information and belief that the majority of residents of the Gilroy complexes are of Mexican descent.

33. In a course of conduct spanning many years, Defendants have put residents' health and safety at risk by failing to properly maintain the Gilroy Complexes as required by law. The Gilroy Complexes contain dangerous and uninhabitable conditions including but not limited to the following:

- infestations of rats, mice, roaches, and bedbugs;
- serious sewage back-ups and plumbing leaks;
- lack of operating heaters;
- pervasive mold, especially in bathrooms; and
- loose railings and rotting second floor walkways.

34. Residents regularly make repair requests and complaints about their respective units' habitability problems, usually when they tender their monthly rent payments to Defendants. Defendants largely ignore complaints and requests for repair of units at the Gilroy Complexes, or they delay repairs for unreasonable periods, forcing residents to endure serious

habitability issues.  Defendants tell tenants who complain about conditions that they should leave if they do not like the conditions, or statements to that effect.

35.     Tenant Plaintiffs are all Latino, are all low-income, and all report having no or few other housing options because of high monthly rental rates at other apartment complexes in Santa Clara County.  Some Tenant Plaintiffs pay $1500 per month for a two-bedroom unit, while the average cost for an apartment is now $2,610 in Santa Clara County.[1]  Tenant Plaintiffs fear eviction because of their limited economic capacity and lack of mobility in a tight rental market.

36.     In or about September 2015, the owners of the Gilroy Complexes issued a notice of rent increase to all residents at 590 Stoney Court, including the Jimenez, Herrera, and Alavez-Jimenez families.

37.     Sometime in September 2015, after they received the rent increase notices, a group of Stoney Court residents organized and met with Defendant David Tsai at the Stoney Court property.  They informed him that they would not be paying the rent increase until repairs to the apartments were made. Mr. Ismael Jimenez was in attendance.  Mr. Ebaristo Alavez and Ms. Josefa Jimenez also attended the meeting.

38.     Defendant David Tsai promised to begin making repairs in January 2016.  As of the date of filing this complaint, the promised repairs to Plaintiffs' units have either not been made or have been made inadequately.

A.     FACTS SPECIFIC TO THE JIMENEZ HOUSEHOLD

39.     Ismael Jimenez and his family have lived in Unit 101-C of 590 Stoney Court since November 2008.

40.     Defendant Tzean Shen regularly, including as recently as May 2016, tells the Jimenez children not to play outside and to not make noise.

41.     During the course of their tenancy, the Jimenez family has been forced to live with the following conditions of disrepair:

- Infestations of mice and cockroaches;

---

[1] Richard Scheinin, _Bay Area rents still rising, just not as quickly as before_, San Jose Mercury News, April 18, 2016. Available at: http://www.mercurynews.com/business/ci_29781840/bay-area-rents-still-rising-just-not-quickly.

- Stove that shocks users and has a nonfunctioning burner;

- Exposed electrical outlets in the living room and bedroom;

- Multiple electrical shorts, including the light in the stove hood, a bedroom ceiling fan, and outlets throughout the unit;

- Nonfunctioning heater;

- Mold in the bathroom;

- A persistent leak from the bathroom ceiling from the upstairs unit;

- Deteriorated kitchen cabinets and a persistent leak under the kitchen sink;

- A poorly installed sliding glass door with a patch of plywood attached that leaks with rain;

- Lack of weather stripping under the front door;

- Unsecure lock on the front door; and

- Inadequate outdoor lighting and too few garbage bins.

42.     The Jimenez household regularly makes repair requests and complaints about the unit's habitability problems.  They do so by informing Defendant Tzean Shen of specific problems at least once every month when he comes to their unit to collect rent payments.

43.     In June 2015, and again in April 2016, the leak in the bathroom ceiling caused so much water to collect on the floor of the bathroom that Ms. Jimenez slipped and fell, causing bruises.  Both the leak and Ms. Jimenez' injuries were reported to the Defendants after each incident.  Defendants attempted to repair the leak more than once, but their attempts to repair are inadequately executed and the leak always reoccurs.  As of the date of filing this complaint, the ceiling continues to leak in the bathroom.

44.     As of the date of filing this complaint, requested repairs to the unit have either not been made or have been made inadequately.

45.     Representatives from the Law Foundation of Silicon Valley visited the Jimenez household's unit on April 27, 2016.  On June 7, 2016, the Jimenez household was served with a 60-Day Notice of termination of tenancy.  On June 8, 2016, Defendant Undine Tsai came to Unit

101-C and asked the Jimenez household whether any lawyers had come to ask them about the conditions of their unit.

**B.     FACTS SPECIFIC TO THE HERERRA HOUSEHOLD**

46.     Carmentina Hererra, her adult son, Luis Alvarez, and Ms. Hererra's other children have lived in Unit 202-B of 590 Stoney Court since February 2015.

47.     During the course of their tenancy, the Herrera household has been forced to live with the following conditions of disrepair:

- Infestations of mice and cockroaches;
- A bedbug infestation so bad that a sofa and two twin beds containing bedbugs had to be completely disposed of;
- Lack of smoke alarm and carbon monoxide detector;
- Nonfunctioning heater;
- Lack of vent in bathroom leading to persistent mold problem;
- Deteriorated kitchen flooring; and
- Inadequate outdoor lighting and too few garbage bins.

48.     Ms. Herrera regularly makes repair requests and complaints about the unit's habitability problems to Defendant Tzean Shen every month when he comes to her unit to collect rent payments.  As of the date of filing this Complaint, the cockroaches have been exterminated, but no other repairs have been made to the Unit.

**C.     FACTS SPECIFIC TO THE ALAVEZ-JIMENEZ HOUSEHOLD**

49.     Ebaristo Alavez, Josefa Jimenez, and their family have lived in Unit 103-B of 590 Stoney Court since October 2009.

50.     Defendant Tzean Shen has made several statements to the Alavez-Jimenez children when they have been outside playing, including yelling at the children for playing with balls.  The children are so fearful of Mr. Shen that they pick up their belongings and retreat inside to their apartments upon seeing him at the property.

51.     Additionally, during the course of their tenancy, the Alavez-Jimenez household has been forced to live with the following conditions of disrepair:

- Infestations of mice, cockroaches, and bedbugs;

- Nonfunctioning electrical outlets;

- Mold in the bathroom;

- Frequent sewage backups;

- Deteriorated kitchen cabinets and peeling paint; and

- Inadequate outdoor lighting and too few garbage bins.

52.     The Alavez-Jimenez family has made multiple requests for repairs during the course of their tenancy that have either not been made or have been made inadequately.  They make complaints at least on a monthly basis when one of the Defendants comes to their door to collect rent payments.

53.     Since 2014, the Alavez-Jimenez family has requested several times that the metal guard at the bottom of their front door be fixed because their children have cut their feet on it where the metal is lifted. This repair has not been made.

54.     In or around January 2015, the tub in the bathroom began to leak water onto the floor.  Despite requesting a repair that month, the tub was not repaired until six months later in July 2015.  The leak caused damage to the bathroom floor and to the carpet in the bedroom. The bedroom carpet was not replaced until a year later in January 2016. Although the manager began putting in new flooring in the bathroom, the project remains incomplete.

55.     Several of the electrical outlets have functioned only intermittently since the Alavez-Jimenez family moved in to the Unit in 2009.  Some outlets, including the bathroom outlet, regularly shock the family upon plugging-in or unplugging appliances.  Defendant Tzean Shen makes temporary repairs of the outlets from time to time, but they do not work for very long before breaking again.  Furthermore, several of the outlets are missing their covers, allowing mice to come through the walls and out through the open outlets into the apartment. According to Ms. Jimenez, the manager told her that there were mice in her apartment because she was dirty.  Ms. Jimenez maintains her home in a clean and sanitary condition.

56.     Aside from fixing a broken door and the inadequate or delayed repairs mentioned above, no further repairs have been made to the Unit as to the filing of this complaint.

**D.     FACTS SPECIFIC TO THE ORTIZ-ROBLES HOUSEHOLD**

57.     Jesucita Ortiz, Rodolfo Robles, and their family have lived in Unit 5 of 611 E. 7th Street since October 2009.

58.      Defendant Tzean Shen regularly tells Ms. Ortiz and Mr. Robles' children to play in their own yard when they are seen playing in common areas at 611 E. 7th Street.  In June 2015, Defendant Tzean Shen came into Unit 5 without notice or permission.  He proceeded to nail a block of wood across the gate in Unit 5's outdoor fence, sealing the point of egress. Defendant Tzean Shen informed Ms. Ortiz that this was to prevent her children from leaving the yard to play in the common area just beyond the fence.

59.     In June 2016, Defendant Tzean Shen demanded that Ms. Ortiz remove the basketball hoop she had in her backyard so her children could no longer play ball outside.

60.     On many occasions, and as recently as August 2, 2016, Defendant Tzean Shen yelled at the children for playing outside.  Upon seeing the children playing hide-and-seek outside, Defendant Tzean Shen asked them what they were doing outside before yelling at them to play in their yard.  Once in their yard, Defendant Tzean Shen continued yelling at the children, telling them that they should be playing inside.

61.     Ms. Ortiz' children actively avoid Defendant Tzean Shen when they are outside, running up trees and running indoors when they see him.

62.     Additionally, during the course of their tenancy, the Ortiz-Robles household has been forced to live with the following conditions of disrepair:

- Infestations of cockroaches and bedbugs;
- Mold in the bathroom;
- Sliding glass door that does not close or lock;
- Deteriorating outdoor fence;
- Nonfunctioning kitchen hood; and
- Inadequate outdoor lighting and too few garbage bins.

63.     The Ortiz-Robles family has made multiple requests for repairs during the course of their tenancy that have either not been made or have been made inadequately.  They make

complaints on a monthly basis when one of the Defendants comes to their door to collect rent payments.

64.     In approximately May 2015, Pacific Gas & Electric came to replace light bulbs and refrigerators throughout the complex at 611 E. 7th Street as part of an energy efficiency promotion effort.  While PG&E did replace light bulbs in Unit 5, they refused to replace the unit's old refrigerator because it was so badly infested with roaches that they could not remove it.

65.     As of the date of filing this complaint, Defendants have not made the other requested repairs, or repairs have been made inadequately.

**E.     INVOLVEMENT OF PROJECT SENTINEL**

66.     In or around March 2016, Project Sentinel received reports of possible discrimination at the Gilroy complexes.  As a result of those reports, it opened an investigation into the Defendants' business practices.

67.     In March 2016, Project Sentinel surveyed tenants at the complex at 611 E. 7th Street in Gilroy.  Trained fair housing surveyors walked door to door in the complex to speak with adult tenants who were willing to answer a set of pre-prepared questions regarding housing conditions and treatment by the landlord.

68.     Throughout their investigation at the complex, tenants reported to Project Sentinel that Defendants, particularly Defendant Tzean Shen, regularly went around the property and told parents not to let their children play outside.  Project Sentinel additionally took photos of two identical, permanent signs in the apartment complex that read, "NO SKATEBOARDING[,] BICYCLE RIDING[,] ROLLERSKATING[,] ROLLERBLADING[,] BALL PLAYING."

69.     Throughout their investigation at 611 E. 7th Street, tenants reported to Project Sentinel that Defendants failed to make repairs in a timely manner, if repairs were made at all. Most tenants complained of vermin in their units, including roaches, spiders, and bedbugs. Many tenants stated that they did not have heat in their unit, with some stating that their furnaces had been completely removed.

70.     Following Project Sentinel's survey of the complex, Defendants questioned residents of the Gilroy Complexes whether they had opened their doors to lawyers asking about the conditions of their units.

71.     In May 2016, Project Sentinel surveyed the eight-unit apartment complex at 10160 and 10162 Park Circle West in Cupertino, California.  This apartment complex is also owned and operated by Defendants David and Undine Tsai.

72.     The wide majority of responsive households at the Cupertino property stated that there were no maintenance issues in their units.  Most responsive households remarked that they were satisfied with the time it took for repairs to be made.

73.     In the course of the survey, Project Sentinel found East Asian, Indian, and White households.  On information and belief, there are no Latino households at the Cupertino property.

74.     Because of Defendants discriminatory acts and failures to repair, Project Sentinel has been forced to divert its spare resources and provide outreach and education to the community.  On May 18, 2016 it conducted a presentation in Gilroy to Latino residents to inform them of their fair housing rights and specifically to educate them on National Origin and familial status discrimination.  The outreach was conducted in Spanish.  Project Sentinel has also distributed more than 150 brochures to Gilroy City Hall, as well as churches, libraries, and school district offices in Gilroy.

75.     Project Sentinel has planned to conduct further education and outreach to the Latino community in Gilroy to counteract Defendants' discriminatory and predatory behavior.

**F.     CODE ENFORCEMENT INSPECTIONS**

76.     Documents from the City of Gilroy Code Enforcement Department reveal numerous reports of problems at the Gilroy Complexes.  Most seriously and most recently, Gilroy Code Enforcement was called out to 590 Stoney Court to address a sewer service blockage on October 29, 2014.  The blockage caused raw sewage to overflow into the front lawn area.  Code Enforcement notes state that, despite contact with Defendant David Tsai on October

30, 2014, the overflowing sewage line was still not capped on November 1, 2014, and that the raw sewage was still not cleaned up days after the owners received notice of the condition.

77.    Unlike the serious and wide ranging habitability complaints and a history of Code Enforcement violations at the Gilroy Complexes, there have not been any complaints or violations requiring attention of municipal authorities at the Cupertino property.

## VII.    INJURIES

78.    As a result of the substandard living conditions in their respective Units and the Gilroy Complexes, Plaintiffs Ismael Jimenez, Yolanda Jimenez, Angeles Jimenez, Antonio Jimenez, Carmentina Herrera, Luis Alvarez, Ebaristo Alavez, Josefa Jimenez, Jesucita Ortiz, Rodolfo Robles, and their children have suffered and continue to suffer physical harm and emotional distress.  This includes, but is not limited to, significant anxiety and stress as a result of living in substandard apartments with rodent and cockroach infestations, plumbing problems, and pervasive mold infestations.

79.    Plaintiff Project Sentinel has expended its valuable and limited resources investigating complaints against Defendants, and providing education to residents of the Gilroy Complexes targeted by Defendants' illegal acts.  Defendants' discriminatory actions have: (1) impaired and frustrated Plaintiff Project Sentinel's mission of eliminating discriminatory housing practices against persons based on their family status, by requiring Project Sentinel to expend resources on programs and activities to counteract the Defendants' discriminatory housing practices; and (2) forced Project Sentinel to devote its scarce resources away from other activities it would have undertaken—such as counseling, educational programs and outreach—to identify and counteract the Defendants' unlawful housing practices.  Project Sentinel has suffered economic losses in the form of staff pay, publication costs, and its inability to undertake other efforts to end unlawful housing practices.

80.    Project Sentinel will continue to devote resources away from other activities until Defendants' unlawful behavior is stopped.  Accordingly, Project Sentinel is entitled to compensatory damages.

81.     Because of Defendants' unlawful acts and practices, the families at the Gilroy Complexes have felt harassed, threatened, been subjected to abuse, mental injury, and been deprived of quiet enjoyment of their home.

82.     Because of Defendants' unlawful acts and practices, the children who reside at the Gilroy Complexes have been intimidated, harassed, and subjected to abuse and mental injury, and have been deprived of the important ability and need to play freely out of doors in the safety and security of their home.

83.     Defendants, acting individually and in concert, directly and through agents, have discriminated against families with children and those associated with those persons.  Since at least 2008, Defendants have created and maintained a hostile environment for families with children at the Gilroy Complexes by limiting children's outdoor play.  Defendants continue to engage in such a pattern or practice of discrimination so as to constitute a continuing violation.

84.     Defendants' rules prohibiting children from playing outside in the common areas has had and continues to have detrimental health effects on all children who have lived at the Gilroy Complexes.

85.     Defendants' conduct was willful, with knowledge of or with reckless disregard for the consequences of their acts.  Accordingly, Plaintiffs are entitled to compensatory damages including emotional distress damages.

86.     Defendants further acted intentionally, maliciously, wantonly, recklessly, and in bad faith with respect to Defendants' conduct described herein.  Accordingly, Plaintiffs are entitled to punitive damages.

87.     There now exists an actual controversy between the parties regarding Defendants' duties under the federal and state fair housing laws.  Accordingly, Plaintiffs are entitled to declaratory relief.

88.     Unless enjoined, Defendants will continue to engage in the unlawful acts and discrimination described above.  Plaintiffs have no adequate remedy at law to halt the continuing unlawful conduct.  Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants' discriminatory acts against families with children and Latino families unless relief is

provided by this Court.  Accordingly, Plaintiffs are entitled to injunctive relief, as set forth below.

## VIII. CLAIMS

### FIRST CLAIM
### *Violation of the Federal Fair Housing Amendments Act on the basis of family status*
### All Plaintiffs vs. All Defendants

89.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in all paragraphs above.

90.    Defendants injured plaintiffs in violation of the Fair Housing Amendments Act by:

a.    Discriminating against residents with children and their children on the basis of familial status in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. §100.65;

b.    Making statements of discrimination, limitation, or preference based upon family status in violation of 42 U.S.C. § 3604(c);

c.    Harassing residents and creating a hostile environment for residents because of their familial status in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. §100.65;

91.    As a proximate cause of Defendants' conduct, Plaintiffs have been damaged and continue to suffer damages, as set forth above.

### SECOND CLAIM
### *Violation of the Federal Fair Housing Amendments Act on the basis of national origin*
### All Plaintiffs vs. All Defendants

92.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in all paragraphs above.

93.    Defendants injured plaintiffs in violation of the Fair Housing Amendments Act by:

a.    Discriminating against Latino residents on the basis of their national origin in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. §100.65;

b.    Harassing residents and creating a hostile environment for residents because of their national origin in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. §100.65;

94.     As a proximate cause of Defendants' conduct, Plaintiffs have been damaged and continue to suffer damages, as set forth above.

**THIRD CLAIM**
***Violation of the California Fair Employment and Housing Act on the basis of familial status***
**All Plaintiffs vs. All Defendants**

95.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in all paragraphs above.

96.     Defendants have injured Plaintiffs in violation of the California Fair Employment and Housing Act by:

    a.   Discriminating against or harassing Plaintiffs because of family status in violation of Cal. Gov't Code §§ 12955(a), 12955(d) , 12955(k);

    b.   Making statements of discrimination, limitation, or preference based on family status, in violation of Cal. Gov't Code § 12955(c);

    c.   Aiding, abetting, or inciting in the discrimination of residents because of family status in violation of Cal. Gov't. Code § 12955(g).

97.     As a proximate cause of Defendants' conduct, Plaintiffs have been damaged and continue to suffer damages, as set forth above.

98.     Wherefore Plaintiffs pray for relief and judgment as set forth below.

**FOURTH CLAIM**
***Violation of the California Fair Employment and Housing Act on the basis of national origin***
**All Plaintiffs vs. All Defendants**

99.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in all paragraphs above.

100.    Defendants have injured Plaintiffs in violation of the California Fair Employment and Housing Act by:

    a.   Discriminating against or harassing Plaintiffs because of national origin in violation of Cal. Gov't Code §§ 12955(a), 12955(d), 12955(k);

      b.   Making statements of discrimination, limitation, or preference based on national origin, in violation of Cal. Gov't Code § 12955(c);

      c.   Aiding, abetting, or inciting in the discrimination of residents because of national origin in violation of Cal. Gov't. Code § 12955(g).

101.   As a proximate cause of Defendants' conduct, Plaintiffs have been damaged and continue to suffer damages, as set forth above.

102.   Wherefore Plaintiffs pray for relief and judgment as set forth below.

### FIFTH CLAIM
### *Violation of the California Unruh Act (Cal. Civ. Code § 51)*
### All Plaintiffs Except Project Sentinel vs. All Defendants

103.   Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in all paragraphs above.

104.   In doing the things herein alleged, Defendants have violated the Plaintiffs' rights to fair housing under the Unruh Civil Rights Act, Cal. Civil Code § 51 *et seq*., in that Defendants have discriminated against Tenant Plaintiffs based upon their familial status in the operation of the property, a business establishment.

105.   Each of the Defendants—David Tsai and Undine Tsai as owners and Tzean Shen as property manager—have maintained a business and professional relationship with the Tenant Plaintiffs.

106.   As described above, Defendants have engaged in, or have allowed their agents to engage in conduct that was hostile against the familial status of the Tenant Plaintiffs.  This conduct included discriminating against Tenant Plaintiffs, promulgating and enforcing discriminatory rules against the Tenant Plaintiffs, and creating a hostile environment against Tenant Plaintiffs.

107.   As described above, Defendants have engaged in, or have allowed their agents to engage in conduct that was hostile against the national origin of the Tenant Plaintiffs.  This conduct included discriminating against the Tenant Plaintiffs, failing to repair their units, and creating a hostile environment against Tenant Plaintiffs.

108.    Defendants' discriminatory conduct alleged herein constitutes a denial of full and equal access to housing accommodations to Plaintiffs within the meaning of California Civil Code § 51 *et seq.*

109.    In addition to compensatory damages, Tenant Plaintiffs are entitled to statutory damages under Civil Code § 52 of up to three times the amount of actual damages.

110.    Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Tenant Plaintiffs, and/or with an improper and evil motive amounting to malice.  Tenant Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

111.    As a proximate cause of Defendants' conduct, Tenant Plaintiffs have been injured and suffered damages, as set forth above. Defendants' unlawful conduct was a substantial factor in causing them harm.

112.    Wherefore Plaintiffs pray for relief and judgment as set forth below.

## SIXTH CLAIM
### *Retaliation in Violation of the Federal Fair Housing Act*
### All Plaintiffs Except Project Sentinel vs. All Defendants

113.    Plaintiffs incorporate by reference the allegations contained in all paragraphs above as if fully set forth herein.

114.    Defendants injured Tenant Plaintiffs in violation of the Fair Housing Amendments Act by unlawfully coercing, intimidating, threatening, or interfering with Tenant Plaintiffs because they have attempted to exercise and enjoy their rights under the Fair Housing Act in violation of 42 U.S.C. §3617.

115.    Defendants retaliated against Tenant Plaintiffs because Tenant Plaintiffs took the following actions related to their fair housing rights: requesting repairs, meeting with the Defendant property owners, communicating with Project Sentinel, and meeting with fair housing attorneys, among other actions.

116.    As a proximate cause of Defendants' conduct, Tenant Plaintiffs have been injured and suffered damages, as set forth above.  Defendants' unlawful conduct was a substantial factor in causing them harm.

117.    Wherefore Plaintiffs pray for relief and judgment as set forth below.

**SEVENTH CLAIM**
***Retaliation in Violation of the California Fair Employment and Housing Act***
**All Plaintiffs Except Project Sentinel vs. All Defendants**

118.    Plaintiffs incorporate by reference the allegations contained in all paragraphs above as if fully set forth herein.

119.    Defendants injured Tenant Plaintiffs in violation of the Fair Employment and Housing Act by unlawfully coercing, intimidating, and threatening them, and interfering with Tenant Plaintiffs because they have attempted to exercise and enjoy their rights protected by Cal. Gov't Code § 12955 in violation of Cal. Gov't Code §12955.7.

120.    As a proximate cause of Defendants' conduct, Tenant Plaintiffs have been injured and suffered damages, as set forth above. Defendants' unlawful conduct was a substantial factor in causing them harm.

121.    Wherefore Plaintiffs pray for relief and judgment as set forth below.

**EIGHTH CLAIM**
***Retaliation***
**(Cal. Civil Code § 1942.5 and Common Law)**
**All Plaintiffs Except Project Sentinel vs. All Defendants**

122.    Plaintiffs incorporate by reference the allegations contained in all paragraphs above as if fully set forth herein.

123.    Defendants have taken negative action against Plaintiffs including but not limited to raising rent, serving eviction notices, and failing to repair conditions related to tenantability, for the purpose of retaliating against Plaintiffs' lawful and peaceable exercise of Plaintiffs' rights under the law against Plaintiffs who complained about conditions at the premises.

124.    Defendants undertook the retaliatory acts alleged herein fraudulently, oppressively, and maliciously and in conscious disregard of Plaintiffs' rights.  Plaintiffs are thus

entitled to recover statutory damages pursuant to Civil Code §1942.5 and punitive damages from Defendants in an amount according to proof.

125.     Wherefore Plaintiffs pray for judgment as set forth below.

### NINTH CLAIM
### *Breach of Quiet Enjoyment*
### *(Cal. Civ. Code. § 1927)*
### All Plaintiffs Except Project Sentinel vs. All Defendants

126.     Plaintiffs incorporate by reference the allegations contained in all paragraphs above as if fully set forth herein.

127.     California Civil Code § 1927 provides that there is an implied warranty of quiet enjoyment in all residential leases.

128.     By maintaining an uninhabitable leased dwelling as described above, and by subjecting Plaintiffs to, among other actions, reduction in services, failure to perform repairs, and failure to take action to resolve ongoing and extensive pest infestations, Defendants breached that duty.

129.     Defendants knew or should have known that Tenant Plaintiffs would suffer hardship and anxiety as a result of Defendants' breach of duty.

130.     As a proximate and legal result of Defendants' breach of quiet enjoyment, Plaintiffs have suffered damages and/or hardship as alleged herein and are entitled to damages in an amount according to proof.

131.     Wherefore Plaintiffs pray for relief and judgment as set forth below.

### TENTH CLAIM
### *Breach of Covenant of Good Faith and Fair Dealing*
### All Plaintiffs Except Project Sentinel vs. All Defendants

132.     Plaintiffs incorporate by reference the allegations contained in all paragraphs above as if fully set forth herein.

133.     Tenant Plaintiffs allege that their respective lease agreements with Defendants referenced above are subject to an implied covenant of good faith and fair dealing with which Defendants are obligated to comply.

134.    Defendants have breached this covenant by actions which include, but are not limited to failing to properly maintain a safe living environment for plaintiffs and failing to comply with legal duties and obligations imposed by State statutes and other applicable laws.

135.    Tenant Plaintiffs did all, or substantially all of the significant things that the lease required them to do or were excused from having to do them.

136.    Defendants unfairly interfered with Tenant Plaintiffs' right to receive the benefits under the lease.

137.    As a proximate result of Defendant's breach of his duties and obligations pursuant to covenants of good faith and fair dealing, Tenant Plaintiffs have been damaged in an amount subject to proof at trial.

138.    Wherefore Plaintiffs pray for relief and judgment as set forth below.

**ELEVENTH CLAIM**
***Breach of Warranty of Habitability***
**(Cal. Civ. Code. § 1941.1)**
**All Plaintiffs Except Project Sentinel vs. All Defendants**

139.    Plaintiffs incorporate by reference the allegations contained in all paragraphs above as if fully set forth herein.

140.    In holding out the units in the apartment complexes for rent to Tenant Plaintiffs, and entering into agreements leasing those units to Tenant Plaintiffs, Defendants impliedly warranted that the rental units were habitable and fit for residential use.

141.    At the time the lease agreements were entered into and throughout the time Tenant Plaintiffs have occupied the premises, Defendants have knowingly permitted and caused hazardous and unhealthy conditions to exist throughout the premises.

142.    Defendants at all times herein mentioned, knew, or should have known that the aforementioned conditions existed in violation of numerous provisions of state and local law. Defendants were given express notice of the conditions by Tenant Plaintiffs on a near monthly basis and refused to abate the conditions.  Defendants affirmatively made at least one unit unsafe by sealing shut the outdoor fence to prevent egress to the public area.

143.     Because of the aforementioned conditions, the premises leased by Tenant Plaintiffs were unsafe and/or unhealthy.  In causing and permitting and in failing and refusing to repair the aforementioned conditions, Defendants breached the warranty of habitability.  By virtue of such breach of warranty, and as a consequence of the condition of the premises, the fair rental value of the premises at all times herein mentioned was less than the actual amounts paid by Plaintiffs.

144.     As a result of Defendants' breach of the warranty of habitability, Tenant Plaintiffs have suffered actual damages and emotional damages in an amount according to proof.

145.     Defendants' conduct in failing to abate the conditions at the Gilroy Complexes is oppressive and malicious and done with a conscious disregard of Tenant Plaintiffs' rights, justifying an award of punitive damages.

146.     Wherefore Plaintiffs pray for relief and judgment as set forth below.

### THIRTEENTH CLAIM
### *Negligence*
### All Plaintiffs Except Project Sentinel vs. All Defendants

147.     Plaintiffs incorporate by reference the allegations contained in all paragraphs above as if fully set forth herein.

148.     Defendants had statutory, common law, and/or contractual duties to maintain the rental units in safe and habitable condition and to not interfere with the civil rights of Tenant Plaintiffs.

149.     Defendants breached those duties by failing and refusing to fix the habitability issues and/or conditions that were injurious to health and safety in each unit of the apartment complexes.

150.     Defendants, at all times herein mentioned, knew, or should have known, that the aforementioned conditions existed in violation of numerous provisions of state and local law. Defendants were given express notice of the conditions by plaintiffs on a near monthly basis and refused to abate the conditions.

151.    As a proximate result of the negligence of Defendants, Tenant Plaintiffs have suffered harm as detailed above, including actual damages and emotional damages.

152.    Wherefore Plaintiffs pray for relief and judgment as set forth below.

## IX.    RELIEF

Wherefore, Plaintiffs pray for the following relief:

1.    That the Court assume supplemental jurisdiction over all state law claims, pursuant to 28 U.S.C. § 1367;

2.    That the Court issue affirmative injunctive relief compelling Defendants, their partners, agents, employees, assignees, and all parties acting in concert or participating with them to maintain habitable conditions of the Gilroy Complexes at all times as required by numerous state laws; requiring Defendants, their partners, agents, employees, assignees, and all parties acting in concert or participating with them to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants regardless of familial status and national origin;

3.    That the Court enjoin all unlawful practices complained about herein and enjoin Defendants from:

> a.    Enforcing or promulgating rules that discriminate against families with children, and children as individuals;
>
> b.    Threatening or intimidating children and families with children, with the intent to prevent or discourage them from using the common areas for play or other recreational activities;

4.    That the Court issue an order that: requires all Defendants to participate in formal fair housing training, and annually thereafter;

5.    That the Court declare that Defendants have violated the provisions of applicable federal and state fair housing laws;

6.    That the Court award actual, statutory, emotional distress, and other compensatory, exemplary, and punitive damages to Plaintiffs according to proof;

7.      That the Court award up to three times the amount of actual damages to Plaintiffs against Defendants pursuant to California Civil Code § 52;

8.      That the Court grant costs of suit, including reasonable attorney's fees; and

9.      That the Court grant all such other relief as the Court deems just.

Dated: August 5, 2016

LAW FOUNDATION OF SILICON VALLEY
FAIR HOUSING LAW PROJECT


/s/ Matthew Warren
Matthew Warren
Attorney for Plaintiffs

1

### JURY DEMAND

2    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby request a trial by jury

3  as to each and every claim for which they are so entitled.

4  Dated: August 5, 2016

5

6                                LAW FOUNDATION OF SILICON VALLEY
                                 FAIR HOUSING LAW PROJECT
7

8                                __/s/ Matthew Warren__
9                                Matthew Warren
                                 Attorney for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28