Kyra A. Kazantzis (SBN: 154612) / kyrak@lawfoundation.org
Annette D. Kirkham (SBN: 217958) / annettek@lawfoundation.org
Diana E. Castillo (SBN: 237281) / dianac@lawfoundation.org
Thomas P. Zito (SBN: 304629) / tom.zito@lawfoundation.org
Matthew Warren (SBN: 305422) / matthew.warren@lawfoundation.org
LAW FOUNDATION OF SILICON VALLEY
FAIR HOUSING LAW PROJECT
152 North Third Street, 3rd Floor
San Jose, CA 95112
Telephone: (408) 280-2411 ** Facsimile: (408) 293-0106

Michael Headley (SBN: 220834) / headley@fr.com
Dalia B. Kothari (SBN: 299867) / kothari@fr.com
Andrew M. Goldberg (SBN: 307254) / goldberg@fr.com
Noorossadat Torabi (SBN: 310124) / torabi@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070 ** Facsimile: (650) 839-5071

Attorneys for Plaintiffs ISMAEL JIMENEZ, YOLANDA JIMENEZ, ANGELES JIMENEZ, ANTONIO JIMENEZ, CARMENTINA HERRERA, LUIS ALVAREZ, EBARISTO ALAVEZ, JOSEFA JIMENEZ, JESUCITA ORTIZ, RODOLFO ROBLES and PROJECT SENTINEL

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## (SAN JOSE DIVISION)

| | |
|---|---|
| ISMAEL JIMENEZ, YOLANDA JIMENEZ, ANGELES JIMENEZ, ANTONIO JIMENEZ, CARMENTINA HERRERA, LUIS ALVAREZ, EBARISTO ALAVEZ, JOSEFA JIMENEZ, JESUCITA ORTIZ, RODOLFO ROBLES, and PROJECT SENTINEL, a California non-profit corporation, on behalf of itself and the general public, | **Case No. 5:16-CV-4434-EJD**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:  April 20, 2017<br>Time:  9:00 A.M.<br>**Dept.: Courtroom 4 – 5th Floor** |
| Plaintiffs, | |
| v. | United States District Court Judge<br>Hon. Edward J. Davila |
| DAVID TSAI, UNDINE TSAI, and SHANG SHEN, | |
| Defendants. | |

Case No.5:16-CV-4434-EJD

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

I    INTRODUCTION ................................................................................................1

II   RELEVANT FACTS AND PROCEDURAL BACKGROUND ..................................1

III  LEGAL STANDARD .........................................................................................4

IV   ARGUMENT ....................................................................................................5

    A.    Undine Tsai Is Properly Named as a Defendant in This Case .......................5

    B.    Plaintiffs have alleged sufficient facts supporting their claims of discrimination under the Fair Housing Act (FHA), 42 U.S.C. § 3604, and the Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12955. ...........................................7

        1.    Plaintiffs have stated a claim for relief that Defendants discriminated against them in violation of the FHA and FEHA because of their national origin and race. ................................................................................... 8

        2.    Plaintiffs have alleged a claim of discrimination based on familial status under the FHA and FEHA ................................................................... 11

    C.    Plaintiffs State a Claim for Relief under the Unruh Act, Cal. Civ. Code § 51. ............14

    D.    Plaintiffs have pled claims for relief that Defendants have intimidated, coerced or retaliated against them in violation of state and federal law. ........................................15

    E.    Project Sentinel has Organizational Standing to Bring its Claims for violations of the FHA and FEHA in this case. ....................................................................................18

V    CONCLUSION ................................................................................................20

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1

2

## TABLE OF AUTHORITIES

**Page(s)**

3

4

**Cases**

5

6

*Bischoff v. Brittain*,
No. 2:14-CV-01970-KJM, 2016 U.S. Dist. LEXIS 58280 (E.D. Cal. April 29,
2016) ...................................................................................................................12

7

8

*Brown v. Smith*,
55 Cal. App. 4th 767 (1997) ..............................................................................14

9

*Budnick v. Town of Carefree*,
518 F.3d 1109 (9th Cir. 2008) ..............................................................................8

10

11

*Chevron USA, Inc., v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) ..............................................................................................9

12

*City of Edmonds v. Wash. St. Bldg. Code Council*,
18 F. 3d 802 (9th Cir. 1994) .................................................................................7

13

14

*Clark v. Universal Builders, Inc.*,
501 F.2d 324 (7th Cir. 1974) ..............................................................................10

15

16

*Contract Buyers League v. F & F Investment*,
300 F. Supp. 210 (N.D. Ill. 1969) ......................................................................10

17

*Dep't of Fair Employment and Hous. v. Super. Ct.*,
99 Cal. App. 4th 896 (2002) .................................................................................8

18

19

*Erickson v. Pardus*,
127 S. Ct. 2197 (2007) ..........................................................................................5

20

21

*Fair Hous. Cong. V. Weber*,
993 F. Supp. 1286 (C.D. Cal. 1997) .............................................................11, 12

22

23

*Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n, Inc.*,
141 F. Supp. 3d 1321, 1326 (S.D. Fla. 2015) ......................................................6

24

*Fair Hous. of Marin v. Combs*,
2000 U.S. Dist. LEXIS (N.D. Cal. 2000) .....................................................19, 20

25

26

*Fair Housing of Marin v. Combs*,
285 F.3d 899 (9th Cir. 2002) ..............................................................................18

27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Hanson v. Veterans Admin.*,
    800 F.2d 1381 (5th Cir. 1986) ............................................................................ 8

*Hargraves v. Capital City Mortgage Corp.*,
    140 F. Supp. 2d. 7 (D.C. 2000) ......................................................................... 10

*Harris v. Amgen, Inc.*,
    717 F.3d 1042 (9th Cir. 2013) ............................................................................ 5

*Harris v. Itzhaki*,
    183 F.3d 1043 (9th Cir. 1999) ............................................................................ 8

*Hous. Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condo. Assoc., Inc.*,
    510 F. Supp. 2d 1003 (S.D. Fla. 2007) .............................................................. 6

*Hurd v. Ramona Land Co.*,
    No. C 02-5739 JL, 2003 WL 23281593 (N.D. Cal. Nov. 12, 2003)................... 5

*Iniestra v. Cliff Warren Invs., Inc.*,
    886 F. Supp. 2d 1161 (C.D. Cal. 2012) ........................................................... 14

*Llanos v. Estate of Coehlo*,
    24 F. Supp. 2d 1052 (E.D. Cal. 1998)........................................................... 7, 12

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................................ 5

*Lowe v. Monrovia*,
    775 F.2d 998 (9th Cir. 1985) ............................................................................. 8

*Manzo v. Hall Vineland Prop., LLC*,
    No. C 10-05279 WHA, 2012 WL 608403 (N.D. Cal. Feb. 24, 2012)........... 16, 17

*Marina Point, Ltd. v. Wolfson*,
    30 Cal. 3d 721 (1982) ....................................................................................... 14

*Mathews v. Arrow Wood*,
    LLC, No. 07-CV-1316-SGL, 2009 WL 8659593 (E.D. Cal. Apr. 2, 2009) ..... 12

*Mathews v. Arrow Wood LLC*,
    No. EDCV-07-1316-SGL, 2009 WL 8659593 (C.D. Cal. Apr. 2, 2009) ......... 11

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .......................................................................................... 8

*Mehta v. Beaconridge Improvement Ass'n*,
    432 Fed. Appx. 614 (7th Cir. 2011) .................................................................. 9

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Meyer v. Holley*,
  537 U.S. 280 (2003) ............................................................................................7

*Moeske v. Miller and Smith*,
  202 F. Supp. 3d 492 (E.D. Virginia 2002) .....................................................18

*Pack v. Fort Washington II*,
  689 F. Supp. 2d 1237 (E.D. Cal, 2009).........................................................12

*Peloza v. Capistrano Unified Sch. Dist.*,
  37 F.3d 517 (9th Cir. 1994) ..............................................................................5

*Pfaff v. HUD*,
  88 F.3d 739 (9th Cir. 1996) ..............................................................................9

*Robinson v. 12 Lofts Realty, Inc.*,
  610 F.2d 1032 (2d Cir. 1979).............................................................................8

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974)............................................................................................5

*Smith v. Pacific Properties and Development Corp.*,
  358 F.3d 1097 (9th Cir. 2004), 455 U.S. 363 (1982)................................18, 19

*Smith v. Powdrill*,
  No. CV 12-06388 DDP RZX, 2013WL 5786586 (C.D. Cal. Oct. 28, 2013) ...........16

*Southern California Housing Rights Center v. Krug*,
  564 F. Supp. 2d 1138 (C.D. Cal. 2007) ..........................................................19

*Spann v. Colonial Village, Inc*.
  899 F.2d 24 (D.C. Cir. 1990) ..........................................................................19

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ..........................................................................5

*Swann v. Burkett*,
  209 Cal. App. 2d 685 (1962) ...........................................................................14

*United States v. California Mobile Home Park Mgmt. Co.*,
  29 F.3d 1413 (9th Cir. 1994) ...........................................................................11

*United States v. City of Hayward*,
  36 F.3d 832 (9th Cir. 1994) ...........................................................................17

*United States v. M. Westland Co.*,
  1995 U.S. Dist. LEXIS 22466 (C.D. Cal. Oct. 24, 1995) ..............................14

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*United States v. Youritan Const. Co.*,
   370 F. Supp. 643 (N.D. Cal. 1973), aff'd in part, remanded in part, 509 F.2d 623
   (9th Cir. 1975).................................................................................................................7

*Walker v. City of Lakewood*,
   272 F.3d 1114 (9th Cir. 2001) ...............................................................................15, 16

*Whitley v. Taylor Bean and Whitaker Mortgage*,
   607 F. Supp. 2d 885 (N.D. Ill. 2009) ........................................................................10

**Statutes**

42 U.S.C. § 3602 ...........................................................................................................11

42 U.S.C. § 3604.....................................................................................................*passim*

42 U.S.C. § 3617 ..............................................................................................15, 16, 17

Cal. Civ. Code § 51 .......................................................................................................1, 14

Cal. Civ. Code § 1942.5.....................................................................................15, 16, 17

Cal. Gov't. Code § 12927(c)(1) ....................................................................................16

Cal Gov't Code § 12955 .........................................................................................*passim*

**Other Authorities**

24 C.F.R. 100.600.....................................................................................................13, 14

24 C.F.R. § 100.65 ...............................................................................................9, 11, 12

Fed. R. Civ. P. 12(b)(6).................................................................................................4

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I       INTRODUCTION

Plaintiffs have pleaded sufficient facts to articulate plausible claims under the federal Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, Cal. Gov't Code §§ 12955 *et seq.*, the Unruh Act, Cal. Civ. Code § 51, and state and federal anti-retaliation laws.  Plaintiffs claim that at two separate multi-family properties in Gilroy, California that Defendants (1) engaged in a pattern of discrimination based on national origin by failing to maintain and repair the units of Latino tenants, (2) discriminated against families with children by creating and maintaining a hostile environment for outdoor child's play, and (3) retaliated against the Jimenez household by evicting them after they sought enforcement of their fair housing rights.  Undine Tsai is a proper Defendant in this case because she is a manager of the Gilroy properties and is therefore an agent of David Tsai, the record owner of those properties.  Defendants' motion to dismiss should be denied in its entirety, alternatively, should the Court find any claim lacking, allow Plaintiffs to amend their complaint.

# II       RELEVANT FACTS AND PROCEDURAL BACKGROUND

Plaintiffs are four low-income Latino families some of whom have lived in the properties owned and/or managed by the Defendant landlords since 2008.  (*See* Plaintiffs' First Amended Complaint ("FAC"), Dkt No. 35 ¶¶ 1, 8-11).  Plaintiffs are residents of Las Animas Apartments, a 32-unit apartment complex, and 590 Stoney Court, a 20-unit apartment complex, both in Gilroy, California ("the Gilroy Complexes"), which are owned by David Tsai and managed by Undine Tsai and Shang Shen ("the Defendants").  (*Id.* ¶¶ 2, 13, 14, 29, 109).  Defendant Undine Tsai also owns and operates an eight-unit apartment complex at 10160 and 10162 Park Circle West in Cupertino, California ("the Cupertino Property").  (*Id.* ¶¶ 14, 75).

Plaintiffs have endured years of mistreatment at the hands of their landlords, the Defendants in this action, including failure to maintain and repair the premises, discrimination on the basis of national origin and familial status, and threats of and/or actual retaliatory eviction.  (*Id.* ¶¶ 1, 34-35, 46-49).  The Gilroy Complexes are in uninhabitable conditions due to lack of operating heaters, sewage backups and plumbing leaks, dangerous electrical problems, pervasive mold, loose railings, rotting second floor walkways, and infestations of rats, roaches, and bedbugs.  (*Id.* ¶¶ 2, 34, 35, 42-

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

44, 51-52, 55-60, 66-68, 73, 80, 75-77, 81).  Despite knowing of these conditions, Defendants have ignored repeated requests to repair these significant problems.  (*Id.*)  For example, on October 29, 2014, a sewer blockage caused an overflow of raw sewage onto the front lawn of the 590 Stoney Court complex.  (*Id.* ¶ 80).  Even though Gilroy Code Enforcement contacted Defendant David Tsai, who owns the 590 Stoney Court complex, on October 29, 2014, the raw sewage was not cleaned and the sewer blockage was not repaired until days later.  (*Id.*)

All or almost all of the residents of the Gilroy Complexes are of Mexican descent.  (*Id.* ¶ 33). The Defendants' failure to repair these problems at the Gilroy Complexes is part of a pattern of discrimination against Latino families, made evident by their leasing of well-kept and well-repaired residential units to non-Latino families at their rental property in Cupertino.  (*Id.* ¶¶ 2, 75-77, 80).  In May 2016, Project Sentinel, a non-profit corporation devoted to promoting fair housing, surveyed the eight-unit apartment complex at 10160 and 10162 Park Circle West in Cupertino, California, which is owned and operated by Defendant Undine Tsai, and found that the wide majority of responsive households stated that there were no maintenance issues in their units.  (*Id.* ¶¶ 75-76).  Most responsive households remarked that they were satisfied with the time it took for repairs to be made. (*Id.*)  In the course of the survey, Project Sentinel found East Asian, Indian, and White households, but no Latino households in residence at the Cupertino Property.  (*Id.* ¶ 77).

Defendants have also engaged in an ongoing practice of intimidating child residents of the Gilroy Complexes to prevent them from playing outside.  (*Id.* ¶¶ 3, 30-32, 41, 54, 62-65, 72, 88).  For instance, Plaintiffs have witnessed Defendant Shang Shen yelling at children and taking away the balls of children playing in the common areas of the Gilroy complex and keeping them in his own yard space.  (*Id.*)  In one instance, Shang Shen nailed the gate shut at one residence to prevent the children living there from playing outside in the complexes' common area.  (*Id.* ¶ 62).  The Defendants have also posted signs at two locations in the complexes reading "NO SKATEBOARDING[,] BICYCLE RIDING[,] ROLLERSKATING[,] ROLLERBLADING[,] BALL PLAYING" and Defendants selectively enforce these rules against children residing at the properties. (*Id.* ¶ 32).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Furthermore, Defendants have retaliated against and/or threatened to retaliate against the Plaintiffs for exercising their legal rights through actions such as requesting repairs, meeting with Defendant property owners, speaking with employees of Project Sentinel, and meeting with fair housing attorneys.  (*Id.* ¶¶ 47, 48, 119, 127, 128).  Specifically, each of the Plaintiff families has made numerous repair requests to Defendants that have largely gone ignored.  (*Id.* ¶¶ 2, 35, 43, 52, 56-57, 67).  On or about September 2015, Defendants issued a notice of rent increase to all residents at the 590 Stoney Court complex.  (*Id.* ¶ 37).  A group of residents, including Plaintiffs Ismael Jimenez, Ebaristo Alavez, and Josefa Jimenez, met with Defendant David Tsai and stated that they would not pay the rent increase until repairs were made to the apartments.  (*Id.*)  Defendant David Tsai promised to begin making repairs in January 2016 but the repairs were never made or were completed inadequately.  (*Id.* ¶ 39).

Additionally, Plaintiffs faced retaliation for speaking with Project Sentinel, which opened an investigation into the Defendants' business practices after it received reports of possible discrimination at the Gilroy complexes.  (*Id.* ¶ 70).  In March 2016, Project Sentinel surveyed tenants at the complex at 611 E. 7th Street in Gilroy.  (*Id.* ¶ 71).  Tenants reported to Project Sentinel that Defendants, particularly Defendant Shang Shen, regularly went around the property and told parents not to let their children play outside.  (*Id.* ¶ 72).  Tenants reported to Project Sentinel that Defendants failed to make repairs in a timely manner, if repairs were made at all.  (*Id.* ¶ 73).  Most tenants complained of vermin in their units, including roaches, spiders, and bedbugs.  (*Id.*)  Many tenants stated that they did not have heat in their unit, with some stating that their furnaces had been completely removed.  (*Id.*)  Following Project Sentinel's survey of the complex, Defendants questioned residents of the Gilroy Complexes whether they had opened their doors to lawyers asking about the conditions of their units.  (*Id.* ¶ 74).

Project Sentinel used its valuable and limited resources to complete this investigation and survey of the Gilroy Complexes.  (*Id.* ¶ 83).  Moreover, Project Sentinel has future plans to dedicate funding to educational outreach to help counteract Defendant's discriminatory conduct and has already used funding to distribute brochures on fair housing rights throughout Gilroy and to conduct

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

an educational presentation on fair housing rights in Spanish to Latino residents in Gilroy as a result of Defendants' actions.  (*Id.* ¶¶ 78, 79).  Defendants' discrimination and predatory behavior has frustrated Project Sentinel's mission of eliminating discriminatory housing practices, caused Project Sentinel to suffer economic losses in the form of staff pay and publication costs, and required Project Sentinel to divert resources away from other efforts it would have undertaken to end unlawful housing practices.  (*Id.* ¶ 83).

After Project Sentinel's survey of the Gilroy Complexes, the Jimenez household was evicted in retaliation for attempting to enforce their fair housing rights.  On April 27, 2016, representatives from the Law Foundation of Silicon Valley visited the Jimenez household's unit.  (*Id.* ¶ 46).  On June 7, 2016, the Jimenez household was served with a 60-Day Notice of termination of tenancy.  (*Id.*)  On June 8, 2016, Defendant Undine Tsai came to unit 101-C and asked the Jimenez household whether any lawyers had come to ask them about the conditions of their unit.  (*Id.*)  On June 13, 2016, Diana Castillo, an attorney with the Law Foundation of Silicon Valley, sent a letter to Defendant David Tsai's counsel for landlord matters, Mr. Kirkman Hoffman, seeking rescission of the 60-Day Notice as retaliatory.  (*Id.* ¶ 47).  On July 19, 2016, Mr. Hoffman responded to Ms. Castillo's letter, asserting that the notice to terminate tenancy was not retaliatory and providing alternative reasons to terminate tenancy not included in the 60-Day "no-cause" notice.  (*Id.*)  On August 5, 2016, the original complaint was filed in the present matter.  Matthew Warren, another attorney with the Law Foundation of Silicon Valley, sent a letter to Mr. Hoffman refuting his previous claims that the notice to terminate tenancy was not retaliatory and again seeking rescission of the 60-Day Notice.  (*Id.* ¶ 48).  Attached to that letter was a courtesy copy of the complaint to highlight the Jimenez household's efforts to enforce their fair housing rights.  (*Id.*)  Despite receiving notice of the Jimenez household's efforts to enforce their fair housing rights, Defendant David Tsai filed an unlawful detainer action against the Jimenez family on August 16, 2016.  (*Id.* ¶ 49).

### III     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the court must deny a motion to dismiss if the allegations in the complaint and information from other permissible sources "plausibly suggest an

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    entitlement to relief." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *Harris v. Amgen*, *Inc.,* 717

2    F.3d 1042, 1035 (9th Cir. 2013).  The issue presented by such a motion is not whether the plaintiff

3    will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of her

4    claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds).

5           When ruling on a motion to dismiss, "a judge must accept as true all of the factual allegations

6    contained in the complaint." *Erickson v. Pardus*, 127 S. Ct. 2197, 2199 (2007) (citing *Bell Atlantic*

7    *Corp. v Twombly*, 550 U.S. 544, 555 (2007)). Courts must assume that all general allegations

8    embrace whatever specific facts might be necessary to support them.  *Peloza v. Capistrano Unified*

9    *Sch. Dist.,* 37 F.3d 517, 521 (9th Cir. 1994).

10          If the Court dismisses any claim for relief, it must then consider whether to grant leave to

11   amend.  The Ninth Circuit has repeatedly held that a district court should grant leave to amend even if

12   no request to amend the pleading was made, unless it determines that the pleading could not possibly

13   be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)

14   (citations and internal quotation marks omitted).

15                                **IV      ARGUMENT**

16   **A.         Undine Tsai Is Properly Named as a Defendant in This Case**

17          The Court should deny Defendants' request to dismiss Undine Tsai from this action.

18   Defendants assert that there are no facts pleaded in the FAC that would make Undine Tsai liable to

19   Plaintiffs.  Defendants are wrong.

20          As a preliminary matter, Defendants have asked the Court to take judicial notice of three

21   Grant Deeds filed at the Santa Clara Recorder's Office.  (Dkt. No. 41).  These Deeds show that on

22   October 2006, David Tsai transferred his legal interest in the Cupertino property to his wife, Undine

23   Tsai via an intra-spousal transfer (*Id.* at Ex. A) and that, on the same day, Undine Tsai transferred her

24   legal interest in the Gilroy Complexes to her husband, David Tsai.  (*Id.* at Exs. B and C).

25          However, the mere fact that Undine Tsai might have no legal ownership interest in the Gilroy

26   Complexes does not mean that she is not liable for her personal conduct in managing these properties.

27   *See, e.g.*, *Hurd v. Ramona Land Co.*, No. C 02-5739 JL, 2003 WL 23281593, at \*4 (N.D. Cal. Nov.

28   12, 2003) (denying defendant's motion for summary judgment and finding that the defendant

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

property manager could be held individually liable under FEHA as an agent of the property owner); *Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n, Inc.*, 141 F. Supp. 3d 1321, 1326 (S.D. Fla. 2015) ("agents such as property managers can be held liable when they have personally committed or contributed to a Fair Housing Act violation."); *Hous. Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condo. Assoc., Inc.*, 510 F. Supp. 2d 1003, 1013–14 (S.D. Fla. 2007) ("Thus, board members can be held liable for their own unlawful conduct under the Fair Housing Act as alleged [by the plaintiff that e]ach and every member of the Board of Directors was personally involved in each and every discriminatory act mentioned infra during their tenure as Members of the Board of Directors.").

Undine Tsai is an agent of David Tsai who manages the Gilroy Complexes.  (FAC ¶¶ 2, 14, 16, 109).  Plaintiffs have alleged that Undine Tsai "actively participates in management of each of the Gilroy Complexes and the properties in Cupertino," (*id.* ¶ 14), that "Defendants were the agents, servants, and employees of each other," (*id.* ¶ 16), and that "Undine Tsai . . . as property manager[]— ha[s] maintained a business and professional relationship with the Tenant Plaintiffs" (*id.* ¶ 109).  In addition, the FAC pleads that Undine Tsai took actions as a property manager which would result in her own personal liability for discrimination under the FHA, FEHA, and Unruh Act.  Particularly, Undine Tsai knew of "unhealthy and unsafe conditions" at the Gilroy Complexes including dangerous electrical issues, sewer backups, lack of proper heating in the apartments, and rat, roach, and bedbug infestations, but "Defendant property manager[] Undine Tsai . . . ignored Plaintiffs' numerous requests to repair these significant problems."  (*Id.* ¶ 2).  Undine Tsai was also involved in the actions underlying at least the Jimenez family's retaliation claims because, as the FAC explains, Undine Tsai came to the Jimenez family's unit and questioned them as to "whether any lawyers had come to ask them about the conditions of their unit."  (*Id.* at ¶ 46).  This action, among others actions taken by Defendants Shang Shen and David Tsai, forms the basis for Plaintiffs' allegations that Defendants "retaliated against Tenant Plaintiffs because Tenant Plaintiffs . . . me[t] with fair housing attorneys" in an attempt to peaceably exercise their rights under the FHA, FEHA, and Unruh Act. (*Id.* ¶¶ 119, 123, 127).  Thus, Plaintiffs have asserted a plausible claim against Undine Tsai, if the Court accepts these factual allegations as true, as it must at this stage.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

As a property manager of the Gilroy Complexes, Undine Tsai may also be liable for the discriminatory actions of Defendant Shang Shen.  Plaintiffs have alleged that Shang Shen was the agent, servant, and employee of Undine and David Tsai and that his actions were ratified and adopted by Undine and David Tsai.  (*Id.* ¶ 16).  And, where an agent of the property manager violates fair housing requirements, the property manager is vicariously liable for those violations. *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("[I]t is well established that the [FHA] provides for vicarious liability."); *United States v. Youritan Const. Co.*, 370 F. Supp. 643, 649 (N.D. Cal. 1973), aff'd in part, remanded in part, 509 F.2d 623 (9th Cir. 1975) (holding property manager defendant liable under the FHA for employees' discriminatory actions where "management's lack of supervision and failure to establish objective and reviewable procedural standards" resulted in discrimination by its employees and "management's failure to act [was] in itself violative of Section 3604(a)"); *Llanos v. Estate of Coehlo*, 24 F. Supp. 2d 1052, 1061 (E.D. Cal. 1998) ("The discriminatory conduct of an apartment manager or rental agent is, as a general rule, attributable to the owner *and property manager* of the apartment complex, [] under the doctrine of respondeat superior.").  Therefore Plaintiffs have a plausible claim that Undine Tsai is vicariously liable for Shang Shen's violations of the FHA, FEHA, and Unruh Act, which include ignoring Plaintiffs' repair requests or making inadequate repairs and selectively enforcing rules not to play outside against children by yelling at them not to play, taking away children's balls, and even nailing shut a gate used by the Ortiz and Robles' children to access common areas where they could play.  (FAC ¶¶ 2, 30, 31, 41, 43, 52, 54, 59, 62-65, 72).  Undine Tsai is thus properly named as a Defendant in this suit and the Court should deny Defendants' Motion to Dismiss her from this lawsuit.

**B. Plaintiffs have alleged sufficient facts supporting their claims of discrimination under the Fair Housing Act (FHA), 42 U.S.C. § 3604, and the Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12955.**

The federal Fair Housing Act is a "broad remedial statute" that is "generously construe[d]" by courts.  *City of Edmonds v. Wash. St. Bldg. Code Council*, 18 F. 3d 802, 804 (9th Cir. 1994).  Under the FHA, Plaintiffs may demonstrate discrimination by direct evidence, or indirect evidence using the

*McDonnell Douglas*[1] burden shifting framework.  *Budnick v. Town of Carefree,* 518 F.3d 1109, 1114 (9th Cir. 2008) (holding that courts rely on Title VII discrimination analysis in cases brought under the FHA).  California courts deploy a similar analysis for claims of housing discrimination brought under FEHA.  Cal. Gov't Code § 12955.8(a) (proof may be made by direct or indirect evidence); *Dep't of Fair Employment and Hous. v. Super. Ct.*, 99 Cal. App. 4th 896, 902 (2002) (applying the *McDonnell Douglas* framework to FEHA claims where there is indirect evidence of discrimination). Under that framework, to articulate a *prima facie* case, a Plaintiff must (1) show that they are a member of the protected class, (2) that they suffered adverse treatment in regards to housing, and (3) the protected class was in part a motivating factor for the adverse treatment.  *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999); *see also Lowe v. Monrovia*, 775 F.2d 998, 1006 (9th Cir. 1985). "Establishing the prima facie case affords the plaintiff a presumption of discrimination. This test does not permit the court to consider rebuttal evidence at the prima facie case stage." *Harris*, 183 F.3d at 1051.  Plaintiffs can make out a case of discrimination under the FHA if their membership in a protected class plays any role in the decision by Defendants.  *See, e.g., Hanson v. Veterans Admin.,* 800 F.2d 1381, 1386 (5th Cir. 1986); *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1036-37 (2d Cir. 1979).

### 1. Plaintiffs have stated a claim for relief that Defendants discriminated against them in violation of the FHA and FEHA because of their national origin and race.

Plaintiffs' claims of discrimination based upon national origin and race are premised on two theories: (1) that Defendants failed to repair or maintain the property because of Plaintiffs' national origin or race, and (2) that Defendants exploited Plaintiffs by providing them inferior and substandard housing because of their race or national origin.  There is no question that Plaintiffs are members of a protected class: All or almost all of the residents of the Gilroy complexes identify as Latino, and the majority of the residents of the Gilroy properties are of Mexican descent.  (FAC ¶ 33).  As demonstrated below, Plaintiffs have articulated claims for relief under either theory that Defendants failed to maintain the property because of their status in a protected class.

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

a. **Failure to maintain or repair the property constitutes discrimination under the FHA and FEHA.**

The Secretary of Housing and Urban Development ("HUD") ordinarily commands considerable deference in interpreting the FHA because HUD is the federal agency primarily assigned to implement and administer Title VIII. *Pfaff v. HUD*, 88 F.3d 739, 747 (9th Cir. 1996). "Accordingly, we review with deference an agency's interpretation of the statute that it has responsibility to enforce, whether that interpretation emerges from an adjudicative proceeding or administrative rulemaking." *Id.*; *Chevron USA, Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). HUD interprets the Fair Housing Act to prohibit "[f]ailing or delaying maintenance or repairs of sale or rental dwellings because of . . . national origin." 24 C.F.R. § 100.65(b)(2); *see also Mehta v. Beaconridge Improvement Ass'n*, 432 Fed. Appx. 614, 617 (7th Cir. 2011) (upholding a resident's Section 3604(b) claim against his homeowners' association for discriminatory maintenance services). Here, the facts pled support Plaintiffs' claims that Defendants violated Section 3604(b) of the Fair Housing Act and Sections 12955(a)(d) & (k) of the Fair Employment and Housing Act by discriminating against Plaintiffs because of their national origin in the provision of services in connection with their housing.

Plaintiffs have alleged that Defendants ignored tenant complaints and repair requests. (FAC ¶¶ 35, 36). The Plaintiffs' housing units, suffer from significant habitability issues that have gone unrepaired such as lack of operating heaters, sewage backups and plumbing leaks, dangerous electrical problems, pervasive mold, loose railings, rotting second floor walkways, and infestations of rats, roaches, and bedbugs. (*Id.* ¶¶ 2, 34, 35, 42-44, 51-52, 55-60, 66-68, 73, 80, 75-77, 81). In contrast to the variety of habitability issues at the Gilroy Complexes, the majority of the tenants surveyed at the Cupertino property, owned and managed by Undine Tsai, stated that there were no maintenance issues in their units and that they were satisfied with the time it took for repairs to be made. (FAC ¶¶ 75,76). In the May, 2016 survey of the property, Project Sentinel found East Asians, Indian, and White households living at the Cupertino property. (FAC ¶ 77). No Latino or Mexican households were discovered at the Cupertino property. (*Id.*) The only apparent reason for the difference in maintenance of the properties appears to be the national origin and race of the tenants at

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1  the two properties.  Plaintiffs' claims that Defendants' treatment of their Latino and Mexican tenants

2  in Gilroy violate the FHA and FEHA based on their failure to provide adequate services have been

3  adequately pled and should not be dismissed.

### b. Defendants have exploited Plaintiffs by providing them with uninhabitable housing because of their national origin or race.

6  Plaintiffs have alleged that Defendants are liable under an "exploitation" theory of

7  discrimination, first recognized in *Clark v. Universal Builders, Inc.,* 501 F.2d 324 (7th Cir. 1974).

8  Courts have found that where members of a protected class are subjected to inferior terms and

9  conditions because of their membership in that protected class, the practice may be considered to be

10  predatory or exploitative and a violation of the fair housing laws.

11  In the instant lawsuit, Plaintiffs have alleged that Defendants targeted them for inferior

12  treatment and denied them repairs and safe, habitable housing solely because they are Latino.  (FAC

13  ¶¶ 2, 35, 36, 76).  Plaintiffs have also alleged that Defendants' Cupertino property does not have

14  these issues and that the tenants at that property are East Asian, Indian and White rather than Latino.

15  (FAC ¶¶ 76, 77, 78).  Plaintiffs have no or few other housing choices because of high monthly rental

16  rates in Santa Clara County.  (FAC ¶ 36).  Plaintiffs have no housing options other than Defendants'

17  Gilroy properties because of the tight and expensive housing market.  (*Id.*)

18  These allegations are sufficient to state a claim under both FHA and FEHA.  *See, e.g.,*

19  *Hargraves v. Capital City Mortgage Corp*., 140 F. Supp. 2d. 7, 11, (D.C. 2000) (holding that that

20  where plaintiffs sufficiently alleged that the terms of defendants loans are unfair and predatory, it was

21  not necessary that the defendants make loans on more favorable terms to anyone other than the

22  targeted class); *Contract Buyers League v. F & F Investment*, 300 F. Supp. 210, 214-16 (N.D. Ill.

23  1969) (denying motion to dismiss in civil rights action because plaintiff homebuyers' allegations that

24  defendants sold homes to them "on discriminatory prices and terms" stated claim under the Civil

25  Right Act and rejecting defendant's argument that comparative evidence was required because it

26  would mean injustice would be allowed so long as it is "visited exclusively on negroes."); *Whitley v.*

27  *Taylor Bean and Whitaker Mortgage,* 607 F. Supp. 2d 885, 901 (N.D. Ill. 2009) (sustaining

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

allegations that plaintiffs were singled out and exploited because of their race and that racial

discrimination served as Defendants' intent or motive and that fraud and misrepresentation were the

particular means of the exploitation).

Although case law surrounding the exploitation theory has all involved residential real estate

transactions, the theory can and should be expanded to include situations such as this where a housing

provider is purposefully targeting and exploiting a specific group of people for inferior treatment and

services.

**2. Plaintiffs have alleged a claim of discrimination based on familial status under the FHA and FEHA**

Discrimination under FHA and FEHA on the basis of family status is illegal. The FHA

provides in relevant part that "it shall be unlawful . . . [t]o discriminate against any person in the

terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities

in connection therewith, because of . . . familial status . . . ." 42 U.S.C. § 3604(b).  *See also* 24 C.F.R.

§ 100.65(b)(4). The Act's "prohibition of discrimination on the basis of familial status extends to

discrimination against families with children[.]"  *Fair Hous. Cong. V. Weber*, 993 F. Supp. 1286,

1290 (C.D. Cal. 1997); *Mathews v. Arrow Wood LLC*, No. EDCV-07-1316-SGL, 2009 WL 8659593,

at *5 (C.D. Cal. Apr. 2, 2009) (quotations omitted); *see also* 42 U.S.C. §§ 3602(c), (f), (i) and (k)

(definitions), 3613(a)(1) (private right of action); *United States v. California Mobile Home Park

Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994) (emphasizing that the Fair Housing Act must be

afforded a "generous construction").

**a. Plaintiffs have pled a prima facie case of Discrimination against families with children under the FHA and FEHA.**

Plaintiffs have pled a *prima facie* case of violations of the FHA and FEHA on the basis of

family status.  Defendants do not dispute that all Plaintiffs are members of a protected class as all

Plaintiffs live with minor children.  42 U.S.C. § 3602(k).  Defendants contend that they have no

written rule barring children from playing outside and that they treat everyone equally.  However,

Plaintiffs have specifically pled that Defendants prevent children from playing outdoors, in common

areas, and that it is only children who are prevented from doing so.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Contrary to Defendants' contention, there is no requirement that a rule barring children from playing outside must be written, just that families with children are limited in the use of the facilities. *See* 24 C.F.R. § 100.65(4).  Prohibiting children from using the common areas, or creating rules specific to child activity constitutes discrimination under the FHA.  *See, e.g*., *Bischoff v. Brittain*, No. 2:14-CV-01970-KJM, 2016 U.S. Dist. LEXIS 58280 (E.D. Cal. April 29, 2016) (holding that guidelines limiting children's use of common areas to when they are supervised by an adult violated 42 U.S.C. § 3604(b)); *Pack v. Fort Washington II*, 689 F. Supp. 2d 1237, 1244 (E.D. Cal, 2009) (holding that rules requiring adult supervision for children under 10 violated 42 U.S.C. § 3604(b) even where rule was for "safety and enjoyment"); *Llanos v. Estate of Coehlo*, 24 F. Supp. 2d. 1052, 1061 (E.D. Cal. 1998) (rule restricting children under 18 from using adult pools "overly broad, 'paternalistic' and unduly restrictive"); *Fair Housing Congress v. Weber*, 993 F. Supp. 1286, 1292 (C.D. Cal. 1997) (rule prohibiting children from playing outside because of disturbance to other tenants or damage to property violated 42 U.S.C. § 3604(b)); *Mathews v. Arrow Wood*, LLC, No. 07-CV-1316-SGL, 2009 WL 8659593, at *1 (E.D. Cal. Apr. 2, 2009)(granting plaintiffs' summary judgment under 3604(b) and (c) for rule against children playing unsupervised).

Here, Defendants practices violate the FHA by prohibiting children from using the common areas and playing outdoors in the privacy of their own yards.  There is no rule barring all use by adults of the common areas or their yards.  Defendants have barred only children from playing outside.  For example, Defendants ordered children out of the common area on August 2, 2016 for playing hide and seek, and then when the children went to their own backyard space, Defendants ordered them to play inside.  (FAC. ¶ 64).  They ordered Plaintiffs to remove a basketball hoop from their yard to prevent children from playing outside *in their own yard*.  (FAC ¶ 63).  Defendants regularly tell Plaintiffs children not to play outside and not to make noise.  (FAC ¶¶ 31, 41).  They nailed shut Ms. Ortiz and Mr. Robles fence to prevent their children from accessing the common areas.  (FAC. ¶ 62).  They maintain two identical signs that are facially neutral, but prohibit basic child activities and are only enforced against children.  (FAC. ¶ 32).  Plaintiffs have pled that they

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

suffered adverse treatment by the Defendants, and therefore have adequately pled a claim under 42 U.S.C. § 3604(b).

**b.   Plaintiffs have pled a claim for relief that Defendants created and maintain a Hostile Environment towards children.**

Defendants have also created and maintain a hostile living environment for children and families with children.  "Hostile environment refers to unwelcome conduct that is sufficiently severe or pervasive as to interfere with: The . . . use or enjoyment of the dwelling, or privileges of the . . . rental, or the provision or enjoyment of services and facilities in connection therewith."  24 C.F.R. 100.600(a)(2).  Whether or not a hostile environment exists depends on the totality of the circumstances and factors "include, but are not limited to the nature of the conduct, the context in which the incident(s) occurred, . . . and the relationships of the persons involved."  24 C.F.R. 100.600(a)(2)(i)(A).  Additionally, in determining whether the unwelcome conduct is sufficiently severe or pervasive to create a hostile environment, the Court looks at the conduct from "the perspective of a reasonable person," here the parents, "in the aggrieved person's position."  24 C.F.R. 100.600(a)(2)(i)(C).  That conduct can be verbal or other conduct and does not need to involve physical contact.  24 C.F.R. 100.600(b).  Lastly, the incident can be a single incident.  24 C.F.R. 100.600(c).

Here, taking the facts as true, Defendants have created and maintained a hostile environment towards Plaintiffs specifically because of their children.  In addition to the other incidents described above where Shang Shen routinely yells at children, (FAC ¶¶ 31, 41, & 54), orders them out of the common areas and orders them to play inside, (FAC ¶ 64), orders Plaintiffs to remove outdoor play structures, (FAC ¶ 63), and nails shut their gate to prevent children from accessing the common area, (FAC ¶ 62), Plaintiffs' children are afraid of Shang Shen, the manager, and run away from him when they see him.  (FAC ¶ 65).  These incidents and conduct interferes with the Plaintiffs' enjoyment of their apartments by terrifying their children and forcing their children to play inside.  The conduct is pervasive and sufficiently severe from the perspective of a reasonable parent in the Plaintiffs' position to create a hostile environment towards children.  Therefore, Plaintiffs have adequately pled

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

that Defendants maintain a hostile environment towards families with children in violation of 42

U.S.C. § 3604(b).  24 C.F.R. 100.600; *see also, United States v. M. Westland Co.*, 1995 U.S. Dist.

LEXIS 22466 (C.D. Cal. Oct. 24, 1995) (holding that a hostile environment is created when the

landlord makes it clear that children are not welcome).

Because FEHA is "substantially similar" to the FHA, liability under the FHA also supports

liability under FEHA.  *Brown v. Smith*, 55 Cal. App. 4th 767, 780 (1997); *Iniestra v. Cliff Warren*

*Invs., Inc.,* 886 F. Supp. 2d 1161, 1169 (C.D. Cal. 2012).  Therefore, Plaintiffs have adequately pled

their claims under FEHA.

### C.  Plaintiffs State a Claim for Relief under the Unruh Act, Cal. Civ. Code § 51.

California's Unruh Act provides broad protection against discrimination.  Cal. Civ. Code §

51.  The plain language of the Act prohibits discrimination on the basis of national origin.  Cal. Civ.

Code § 51(b).  The Act prohibits landlords from discriminating against potential or existing tenants.

*Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 731 (1982) ("the provisions of the Unruh Act, in light

of its broad application to 'all business establishments', have been held to apply with full force to the

business of renting housing accommodations."); *Swann v. Burkett*, 209 Cal. App. 2d 685 (1962)

(holding that owners who rented out a private triplex unit for gain were subject to the Unruh Act,

even though they employed no persons to assist them in the rental or maintenance of the property and

maintained no office).  Moreover, the Unruh Act has been interpreted to prohibit landlords from

discriminating against children and families with children.  *Marina Point, Ltd.*, 30 Cal. 3d at 736;

Cal. Civ. Code §51.2.

Here, as stated above, Plaintiffs have alleged sufficient facts to state claims of discrimination

by Defendants under the FHA and the FEHA.  Plaintiffs have alleged that Defendant Undine Tsai

actively participates in the management of both of the Gilroy Complexes and the properties in

Cupertino, and in so doing, she has acted as the agent of David Tsai, owner of the Gilroy Complexes.

(FAC ¶ 14, 16).  This connection in property management and the differential maintenance practice

supports a claim of discrimination on national origin where Plaintiffs are adversely impacted.

Moreover, Plaintiffs have alleged that Defendants have discriminated against them based on their

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1  family status by preventing outdoor child's play.  (FAC ¶¶ 31, 41, 54, 62, 63, 64).  Therefore,

2  Plaintiffs' claims for violations of the Unruh Act should not be dismissed.

3  **D. Plaintiffs have pled claims for relief that Defendants have intimidated, coerced or retaliated against them in violation of state and federal law.**

4

5  Plaintiffs Ismael Jimenez, Yolanda Jimenez, Angeles Jimenez, and Antonio Jimenez have set

6  forth sufficient facts to support their retaliation claims under the FHA (Claim VI), the FEHA (Claim

7  VII), and California Civil Code § 1942.5 and common law (Claim VIII).

8  The Fair Housing Act makes it unlawful "coerce, intimidate, threaten, or interfere with any

9  person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, any right

10  granted or protected by [42 U.S.C. § 3604.]"  42 U.S.C. § 3617.  FEHA has similar protections.  Cal

11  Gov't Code § 12955.7.  To establish a prima facie case of retaliation, a plaintiff must show that (1) he

12  engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal

13  link exists between the protected activity and the adverse action.  *Walker v. City of Lakewood*, 272

14  F.3d 1114, 1128 (9th Cir. 2001) (citations omitted).  California Civil Code 1942.5 likewise protects

15  tenants from retaliation, and entitles tenants to a presumption of retaliation if the landlord's adverse

16  action is taken within 180 days' of a tenant's protected activity. *See* Cal. Civ. Code § 1942.5.

17  Plaintiffs have shown a likelihood of success on the merits of their claims for violation of section

18  3617 of the FHA, Section 12955.7 of FEHA, and Cal. Civ. Code § 1942.5 and common law, or have

19  shown the existence of substantial questions going to the merits of those claims.

20  Plaintiffs Ismael Jimenez, Yolanda Jimenez, Angeles Jimenez, and Antonio Jimenez engaged

21  in protected activity by 1) making monthly complaints about the substandard conditions in the

22  premises prior to and following September 2015; 2) in September 2015, organizing a meeting with

23  Defendant David Tsai in which they made complaints about the substandard conditions in their unit;

24  3) in April 2016, complaining about a leak in the bathroom ceiling that caused so much water to

25  collect on the bathroom floor that Ms. Jimenez slipped and fell; 4) on April 27, 2016, having

26  representatives from the Law Foundation of Silicon Valley visit the premises to investigate the

27  substandard conditions; 5) on July 13, 2016 sending a letter through their attorneys the Law

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Foundation of Silicon Valley demanding that the landlord rescind the 60-day notice of termination of tenancy; and 6) on August 5, 2016, sending a letter through their attorneys the Law Foundation of Silicon Valley demanding that the landlord rescind the 60-day notice of termination of tenancy and providing a copy of the complaint for the tenants' affirmative fair housing lawsuit.  (FAC ¶¶ 2, 35, 37, 39, 43, 47, 48, 52, 56-57, 67, 72-73, 119, 127-128).  Defendants served a 60-day notice to terminate tenancy on June 7, 2016.  (FAC ¶ 46).  On June 8, 2016, Defendant Undine Tsai came to Unit 101-C and asked the Jimenez household whether any lawyers had come to ask them about the conditions of their unit.  (FAC ¶ 47).  On August 16, 2016, Defendant David Tsai filed an unlawful detainer action against the Jimenez household.  (FAC ¶ 49).

Defendants' termination of Plaintiffs' tenancy and subsequent filing of an unlawful detainer suit constitute adverse action under both § 3617 and Cal. Gov't Code § 12955.7.  *See Walker v. City of Lakewood*, 272 F.3d 1114, 1129-30 (9th Cir. 2001) (emphasizing that the prohibition against interference set forth in § 3617 is to be broadly applied); *also see Smith v. Powdrill*, No. CV 12-06388 DDP RZX, 2013WL 5786586, at *9-10 (C.D. Cal. Oct. 28, 2013) (termination of tenancy after attempt to obtain reasonable accommodation of disability pursuant to 42 U.S.C. § 3604(f) constituted unlawful interference under § 3617); Cal. Gov't. Code § 12927(c)(1).  Defendants' termination of Plaintiffs' tenancies is also unlawful pursuant to § 3617 in that it amounts to a message of intimidation to other tenant families.  *See Walker*, 272 F.3d 1128 (violation of § 3617 need not involve force or violence).  Defendants' termination of Plaintiffs' tenancy likewise constitutes adverse action under Cal. Civ. Code 1942.5 and common law. Cal. Civ. Code 1942.5(a).

The closeness in time between each of Plaintiffs' protected actions suggests that the eviction notices were served in retaliation to Plaintiffs' engagement in the protected activity.  *See Manzo v. Hall Vineland Prop., LLC*, No. C 10-05279 WHA, 2012 WL 608403, at *4 (N.D. Cal. Feb. 24, 2012).  The 60-day notice of termination of tenancy served on the Jimenez household was only 41 days from the April 27, 2016 date that the Law Foundation of Silicon Valley visited the premises to investigate the substandard conditions.  The Jimenez household had also made a complaint regarding the water leak in the bathroom ceiling which caused Ms. Jimenez to slip and fall in April of 2016.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

On June 8, 2016, only one day after Defendants served the 60-day notice of termination of tenancy to the Jimenez household, Defendant Undine Tsai went to the Jimenez' unit and asked them whether any lawyers had come to ask them about the conditions of the unit, indicating Defendant's prior knowledge of the Jimenez household's habitability complaints to the Law Foundation of Silicon Valley.  Taken together, the short time between these events provide further evidence of the retaliatory nature of Defendants' actions.  *Manzo*, 2012 WL 608403, at *4.

Further, despite the actual notice by the Law Foundation of Silicon Valley to Defendants' counsel Kirkman Hoffman on July 13, 2016 and August 5, 2016 that their notice was retaliatory in violation of the FHA and FEHA, Defendants proceeded to evict Plaintiffs.  Defendants had actual knowledge of this lawsuit before attempting to evict the Jimenez household, because on August 5, 2016, Defendant's counsel was sent a copy of the Plaintiffs' original complaint in this matter. Defendants filed their unlawful detainer action only 11 days after Defendants were provided with a copy of the filed Complaint.  Before each adverse action, the 60-day notice of termination of tenancy and the subsequent unlawful detainer action, Defendants had knowledge of Plaintiffs' complaints regarding the habitability of the premises.  Defendants were aware that the Jimenez household was receiving legal assistance from the Law Foundation of Silicon Valley to assert their fair housing rights.  Together, these acts show a pattern of intimidation and coercion intended to chill Plaintiffs' fair housing rights.

Defendants' acts interfered with and intimidated Plaintiffs in the assertion of their rights under 42 U.S.C. § 3604 and Cal. Gov't. Code § 12955.7.  "The language 'interfere with' has been broadly applied 'to reach all practices which have the effect of interfering with the exercise of rights' under the federal fair housing laws." *United States v. City of Hayward*, 36 F.3d 832, 835 (9th Cir. 1994).  Defendants' acts also violate Civ. Code 1942.5, because they occurred within 180 days of Plaintiffs' complaints regarding the tenantability of the premises.  Cal. Civ. Code § 1942.5(a). Therefore, Plaintiffs have adequately pled claims for relief pursuant to 42 U.S.C. § 3617, Cal. Gov't Code §12955.7, and Cal. Civ. Code § 1942.5.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1
2

**E.  Project Sentinel has Organizational Standing to Bring its Claims for violations of the FHA and FEHA in this case.**

3

It is settled Ninth Circuit law that housing rights organizations such as Project Sentinel have

4

standing to sue in cases such as this one.  Fair housing organizations have standing to recover two

5

types of damages (in addition to punitive damages): diversion of resources & frustration of mission.

6

*See Fair Housing of Marin v. Combs*, 285 F.3d 899 , 905 (9th Cir. 2002).

7

Organizational standing may be granted when a fair housing organization has suffered injury

8

in fact.  *Smith v. Pacific Properties and Development Corp.,* 358 F.3d 1097, 1101 (9th Cir. 2004),

9

455 U.S. 363 (1982).  In *Pacific Properties,* the 9th Circuit reaffirmed its holding in *Fair Housing of*

10

*Marin* by stating that a fair housing organization can satisfy the requirement of injury in fact if it can

11

demonstrate (1) that it frustrated its organizational mission; and (2) diverted its resources to combat

12

the particular housing discrimination in question.  *National Fair Housing Alliance v. A.G. Spanos*

13

*Construction*, Inc., 542 F. Supp. 2d 1054, 1063 (citing *Fair Housing of Marin and Pacific*

14

*Properties*).

15

Defendants assert that Project Sentinel cannot establish standing because it has suffered no

16

real injury.  However, Project Sentinel surveyed tenants at the complex at 611 E. 7th Street, in

17

Gilroy.  (FAC ¶ 71).  Project Sentinel testers walked door to door in the complex to speak with adult

18

tenants who answered pre-prepared questions regarding housing conditions and treatment by the

19

landlord.  (*Id.*)  Surveying tenants at a property has been held to be sufficient to confer standing upon

20

a fair housing organization.  *See Moeske v. Miller and Smith*, 202 F. Supp. 2d 492 , 494 (E.D.

21

Virginia 2002).  In *Moeske,* the Equal Rights Center (ERC) advised and counseled the Plaintiff about

22

her right to a reasonable accommodation, and sent out two sets of surveyors to survey properties

23

owned by Defendant for design and construction defects.  The Court found that this was enough for

24

ERC to demonstrate "a palpable injury to itself."  (*Id.*)

25

On the face of their complaint, Plaintiffs have alleged that Project Sentinel's mission is to

26

develop and promote fairness and equality of housing for all persons and to advocate peaceful

27

resolution of disputes for community welfare and harmony and one of its specific goals is the

28

elimination of all forms of illegal discrimination.  (FAC ¶ 12).  "Therefore, any violation of the

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

FHAA would therefore constitute a frustration of [plaintiffs] mission. . . ."  *Smith*, 358 F.3d at 1105-06 (*citing Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002), cert. denied, denied, 537 U.S. 1018 (2002)).

"Frustration of mission damages are future costs that [a fair housing organization] will be forced to expend to rectify the effects of Defendants' discriminatory actions." *Southern California Housing Rights Center v. Krug*, 564 F. Supp. 2d 1138, 1152 (C.D. Cal. 2007).  Frustration of mission damages are awardable because a fair housing organization may suffer redressable injury to its "non-economic interest in encouraging open housing."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368, n.20 (1982).  To recover these damages, a fair housing organization must establish that expenditures in education, counseling and/or outreach are necessary to counterbalance the effects of a defendant's discriminatory practices.  *Spann v. Colonial Village, Inc*. 899 F.2d 24, 28-29 (D.C. Cir. 1990).

Frustration of mission damages have been awarded for the following activities: (1) future on-site tests and surveys to monitor the subject property; (2) fair housing education for the subject property's tenants; (3) fair housing management education for Defendants and their agents; and (4) future advertising costs in the local newspaper.  *See Krug,* 564 F. Supp. 2d at 1153.  In the instant lawsuit, Project Sentinel has alleged that it plans to expend future costs to conduct further education and outreach to the Latino community in order to counteract Defendants' discriminatory and predatory behavior.  (FAC ¶ 79).

Diversion of resources damages are equivalent to the "opportunity costs" of pursuing the investigation of Defendants' practices.  *Fair Hous. of Marin v. Combs*, 2000 U.S. Dist. LEXIS * 4737 (N.D. Cal. 2000) (citing *U.S. v. Balistrieri*, 981 F. 2d 916, 933 (7th Cir. 1992)).  Project Sentinel's damages for diversion of resources are the activities that Project Sentinel had to forego to address Defendants' actions.  Therefore, these damages are cognizable for harm caused by the "diversion of resources" away from core Project Sentinel activities in order to investigate allegations of housing discrimination.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Project Sentinel has alleged sufficient facts to establish that it diverted its scarce resources in response to Defendants' discriminatory practices against families with children and Latinos.  Project Sentinel specifically states in its complaint that in order to monitor the violations and educate the public regarding the discrimination at issue, it has had to divert its scarce resources from other efforts to provide outreach and education to the community.  (FAC ¶ 78).  Project Sentinel conducted a presentation in Gilroy to Latino residents to inform them of their fair housing rights and specifically to educate them on national origin and familial status discrimination.  Project Sentinel also distributed more than 150 brochures to Gilroy City Hall, churches, libraries and school district offices in Gilroy. (*Id.*)

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety. Alternatively, Plaintiffs should be allowed leave to file an amended Complaint should the Court dismiss any of their causes of action.

Dated:  November 4, 2016                    FISH & RICHARDSON P.C.


                                            By: */s/ Michael R. Headley*
                                                 Michael R. Headley

                                            Attorneys for Plaintiffs
                                            ISMAEL JIMENEZ, YOLANDA JIMENEZ,
                                            ANGELES JIMENEZ, ANTONIO JIMENEZ,
                                            CARMENTINA HERRERA, LUIS ALVAREZ,
                                            EBARISTO ALAVEZ, JOSEFA JIMENEZ,
                                            JESUCITA ORTIZ, RODOLFO ROBLES and
                                            PROJECT SENTINEL

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**