United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ISMAEL JIMENEZ, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>DAVID Y TSAI, et al.,<br><br>        Defendants. | Case No.  5:16-cv-04434-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 40 |

Plaintiffs[1] are four low-income Latino families residing at Las Animas Apartments in Gilroy, California.  Plaintiffs bring this action, on behalf of themselves and their minor children, against the property owner, David Tsai, and property managers, Undine Tsai and Shang Shen (collectively, "Defendants"), for damages arising from the poor living conditions present at the Las Animas Apartments.  Plaintiffs allege that Defendants continued failure to properly maintain or make necessary repairs to the property violates the Federal and California Fair Housing Act ("FHA"), and gives rise to related state law claims.  Presently before the court is Defendants' Motion to Dismiss Claims I-VIII of Plaintiffs' First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Dkt. No. 40 ("MTD").

The court has subject matter jurisdiction over Plaintiffs' Federal FHA discrimination claims in this action pursuant to 28 U.S.C. § 1331, and maintains supplemental jurisdiction over

---

[1] Plaintiffs include individuals Ismael Jimenez, Yolanda Jimenez, Angeles Jimenez, Antonio Jimenez, Carmentina Herrera, Luis Alvarez, Ebaristo Alavez, Josefa Jimenez, Jesucita Ortiz, and Rodolfo Robles, as well as Project Sentinel, a California non-profit corporation, that joins in bringing this action on behalf of itself and the general public.

Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Based on a careful review of the parties' briefing, as well as the arguments of counsel at the hearing held on April 20, 2017, Defendants' Motion will be GRANTED IN PART and DENIED IN PART for the reasons explained below.

## I. BACKGROUND

Plaintiffs are self-described "low income Latino residents" of Las Animas Apartments. The Las Animas Apartments are comprised of two complexes in Gilroy, California: a 32-unit building located at 611 E. 7th Street, as well as a 20-unit building located at 590 Stoney Court, (collectively "the Gilroy Complexes").

Ismael Jimenez, Yolanda Jimenez, Antonio Jimenez, Angeles Jimenez, and Angeles' two minor children – "N.J." (age 14) and "S.J." (age 8) – (collectively "the Jimenez Family") are residents of the Gilroy Complex at 590 Stoney Court. FAC ¶ 8. The Jimenez Family has lived at this location since November 2008. Id. The members of the Jimenez Family identify as Latino and are of Mexican descent. Id.

Carmentina Herrera, her adult son Luis Alvarez, and her three minor children – "B.A." (age 16), "S.A." (age 15), and "A.A." (age 12) – (collectively "the Herrera Family") are all residents of the Gilroy Complex at 590 Stoney Court and have lived there since February 2015. Id. ¶ 9. The members of the Herrera Family identify as Latino and are of Mexican descent. Id.

Ebaristo Alavez, Josefa Jimenez, and their five minor children – "G.A." (age 17), "J.A." (age 14), "D.A." (age 12), "C.A." (age 8), and "A.A." (age 6) – (collectively, "the Alavez-Jimenez Family") are all residents at 590 Stoney Court and have lived there since November 2008. Id. ¶ 10. The members of the Alavez-Jimenez Family identify as Latino and are of Mexican descent. Id.

Jesucita Ortiz, Rodolfo Robles, and their five minor children – E.R." (age 14), "E.R." (age 12), "J.D.R." (age 10), "L.R." (age 7), and "A.R." (age 6) – are residents at 611 E. 7th Street in Gilroy, California. They have lived there since October 2009. Ms. Ortiz and Mr. Robles identify as Latino and are of Mexican descent.

Project Sentinel is a non-profit California corporation with its principal place of business located at 1490 El Camino Real, in Santa Clara, California. Compl. FAC ¶ 12 "Project Sentinel's mission is to develop and promote fairness and equality of housing for all persons and to advocate peaceful resolution of disputes for community welfare and harmony and one of its specific goals is the elimination of all forms of illegal housing discrimination." Id. In pursuit of this mission, Project Sentinel engages in activities including "(1) investigating allegations of discrimination; (2) conducting tests of housing facilities to determine whether equal opportunity in housing is provided; (3) taking such steps as it deems necessary to assure such equal opportunity and to counteract and eliminate discriminatory housing practices; and, (4) providing outreach and education to the community regarding fair housing." Id.

The Gilroy Complexes are owned by Defendant David Tsai, who currently resides in Santa Clara County, California . FAC ¶ 13. Defendant Undine Tsai owns residential rental properties located at 10160 and 10162 Park Circle West in Cupertino, California (the "Cupertino Properties"). Plaintiffs assert that Undine Tsai also actively participates in management of each of the Gilroy Complexes and the properties in Cupertino. FAC ¶ 14. Plaintiffs contend, on information and belief, that Defendant Shang Shen is the property manager at the Gilroy Complexes.

Plaintiffs allege that residents at the Gilroy Complexes have long endured unsanitary and unsafe living conditions, including, *inter alia*, infestations of rats, mice, roaches, and bedbugs; serious sewage back-ups and plumbing leaks; lack of operating heaters; pervasive mold, especially in bathrooms; dangerous electrical problems, unsecured locks on the doors, inadequate lighting, and loose railings and rotting second floor walkways. FAC ¶¶ 2, 34, 42, 51, 55, 66, 73, 80. That despite knowing of these persistent unhealthy and unsafe conditions, Defendant owner David Tsai and Defendant property managers Undine Tsai and Shang Shen largely ignored Plaintiffs' numerous requests for repairs and complaints regarding the habitability of their apartment units. FAC ¶¶ 2, 35, 42-44, 51-52, 55-60, 66-68.

Case No.: 5:16-cv-04434-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiffs further allege that the poor conditions of the Gilroy Complexes stand in stark contrast to the conditions of the Cupertino Property owned by Defendant Undine Tsai. Based on a survey conducted by Project Sentinel, Plaintiffs allege that "the majority of responsive households at the Cupertino property stated that there were no maintenance issues in their units" and indicated that "they were satisfied with the time it took for repairs to be made." FAC ¶ 76. Plaintiffs represent that the Cupertino Property is made up East Asian, Indian, and White residents, and has no known Latino households. FAC ¶ 77.

With respect to the Jimenez Family specifically, Plaintiffs allege that on April 27, 2016, representatives from the Law Foundation of Silicon Valley visited the Jimenez Family's unit. FAC ¶ 46. On June 7, 2016, Defendants served the Jimenez Family with a 60-Day Notice of termination of tenancy. Id. And one day later, on June 8, 2016, Plaintiffs allege that Defendant Undine Tsai came to the Jimenez Family's apartment unit and asked "whether any lawyers had come to ask them about the conditions of their unit." Id. On July 13, 2016, an attorney with the Law Foundation of Silicon Valley sent a letter on behalf of the Jimenez Family to Defendant David Tsai seeking rescission of the 60-Day Notice as retaliatory. FAC ¶ 47. On July 19, 2016, counsel for Defendants responded, asserting that the notice to terminate tenancy was not retaliatory and "providing alternative reasons to terminate tenancy not included in the 60-Day 'no-cause' notice." Id.

Plaintiffs filed the original complaint in this case (Dkt. No. 1) on August 5, 2016. FAC ¶ 48. Eleven days later on August 16, 2016, Defendant David Tsai filed an unlawful detainer action against the Jimenez Family. FAC ¶ 49.

Apart from the concerns regarding the conditions of the property, Plaintiffs also contend that Defendants regularly intimidated children at the Gilroy Complexes in an effort to prevent them from playing outside and in the common areas. Plaintiffs allege that Shang Shen, the on-site property manager, yelled at their children on numerous occasions for playing outside, ordered Plaintiffs to remove a basketball hoop in their own yard, took balls and toys away from the

4

children, and even nailed shut Ms. Ortiz and Mr. Robles' fence to prevent the children from having access to the common area. FAC ¶¶ 3, 30-31, 41, 62-64. Plaintiffs contend that Defendants' actions, behaviors, and practices have created such a hostile environment that when children see Shang Shen, they retreat indoors out of fear. Id. ¶ 3. According to Plaintiffs, this has resulted in families with children being "unable to fully enjoy the place where they live." Id.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the… claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 556-57. A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal of a claim under Rule 12(b)(6) may be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988); see Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

At the motion to dismiss stage, the court must read and construe the complaint in the light most favorable to the non-moving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. "In all cases, evaluating a complaint's plausibility is a context-specific endeavor that requires courts to draw on ... judicial experience and common sense." Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d

5

1542, 1555 n. 19 (9th Cir. 1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). In the event that a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv–Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).

## III.    DISCUSSION

### A.    Undine Tsai is a Proper Party to this Action

As an initial matter, Defendants argue that Undine Tsai is not a proper party to this action because she has no ownership interest in the Gilroy Complexes at issue. See MTD at 6. In support of this position, Defendants request that the court take judicial notice of three Grant Deeds filed at the Santa Clara Recorder's Office regarding the properties. See Dkt. No. 41 ("RJN"). The deeds show that on October 27, 2006, David Tsai transferred his legal interest in the Cupertino property to his wife, Undine Tsai, and on the same day, Undine Tsai transferred her legal interest in both Gilroy properties to her husband, David Tsai. Id. at Exs. A-C. Accordingly, Defendants move to dismiss all claims against Undine Tsai as a matter of law.

Notwithstanding this evidence, the court finds that Plaintiffs sufficiently allege potential liability as to Undine Tsai that is independent of any legal interest in the Gilroy Complexes. Plaintiffs allege that Undine Tsai was a property manager for the Gilroy Complexes and "actively participate[d] in management of" each of the Gilroy and Cupertino properties. FAC ¶¶ 2, 14, 16 109. In her capacity as property manager, Plaintiffs contend that Undine Tsai knew of unsanitary and unsafe conditions at the Gilroy Complexes - including a lack of adequate heating, "sewage backups, dangerous electrical problems, and infestations of rats, roaches and bedbugs" - and "ignored Plaintiffs' numerous requests to repair these significant problems." FAC ¶ 2. Plaintiffs further alleged that it was Undine Tsai who had contacted the Jimenez family in person at their

6

home and questioned them regarding "whether any lawyers had come to ask them about the conditions of their unit." FAC ¶ 46. Notably, this is one of the specific actions Plaintiffs plead as the basis for their retaliation claim. See id. ¶¶ 46, 119, 123, 127. These allegations relate specifically to claims against Undine Tsai, regardless of her ownership interest in the Gilroy Complexes. See Hurd v. Ramona Land Co., 2003 WL 23281593, at *4 (N.D. Cal. Nov. 12, 2003) (holding that *an apartment manager* could be individually liable to tenant for housing discrimination if it discriminated against the tenant while acting within its authority).

It is also possible – as Plaintiffs argue – that as the property manager for the Gilroy Complexes, Undine Tsai could be held vicariously liable for the alleged discriminatory actions of Defendant Shang Shen, if Shang Shen was acting as an agent or employee of Undine and David Tsai when he took any such actions. See United States v. Youritan Const. Co., 370 F. Supp. 643, 649 (N.D. Cal. 1973), aff'd in part, remanded in part, 509 F.2d 623 (9th Cir. 1975) (explaining that the "discriminatory conduct of an apartment manager or rental agent is, as a general rule, attributable to the owner and property manager of the apartment complex," and holding that a manager may be liable for the discrimination of its agent where the manager's lack of supervision or failure to establish appropriate policies and standards results in discrimination).

Accepting these factual allegations as true for the purposes of the instant Motion, Plaintiffs have adequately advanced legal theories under which Undine Tsai could be directly liable for her personal conduct in managing the properties, and/or vicariously liable for the conduct of her agents or employees. Accordingly, Undine Tsai is a proper defendant to the claims asserted in this action. Defendants' Motion to Dismiss all claims against Undine Tsai as an improper party is therefore DENIED. To the extent that Defendants' Reply brief challenges the sufficiency of the factual allegations in stating a legal claim – i.e. that Plaintiffs "fail to assert facts…that [Undine Tsai's] failure to repair was based on discrimination" – such challenges will be addressed with Defendants' other 12(b)(6) arguments. See Dkt. 54 ("Reply") at 3.

### B. Discrimination Claims

Plaintiffs' first four causes of action assert claims for violations of the federal Fair Housing Act ("FHA") and California's Fair Employment and Housing Act ("FEHA"). Plaintiffs allege that Defendants discriminated against them in the terms, conditions, privileges, and services provided at the Gilroy Complexes by failing to maintain adequate, sanitary, and safe living conditions, and by prohibiting children from playing outside and otherwise enjoying the facilities on the property. FAC ¶¶ 94, 97, 100, 104. Plaintiff alleges that such discrimination occurred on the basis of familial status, race, and national origin. Id.

The Fair Housing Act (FHA) makes it "unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The Secretary of Housing and Urban Development ("HUD") - the agency tasked with implementing FHA - further provides that discrimination "in the provision of services or facilities" includes "failing or delaying maintenance or repairs" of a rental dwellings, or "limiting the use or privileges, services, or facilities associated with a dwelling," on account of "race, color, religion, sex, handicap, familial status, or national origin." 24 C.F.R. § 100.65(a)(1), (4); see The Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 711 (9th Cir. 2009). Thus, the FHA not only requires that individuals be given the opportunity to secure housing in a non-discriminatory manner, but also "guarantees their right to equal treatment once they have become residents of that housing." Hous. Rights Ctr. v. Sterling, 404 F. Supp. 2d 1179, 1192 (C.D. Cal. 2004); Patton v. Hanassab, 2016 WL 4507022, at *6 (S.D. Cal. Aug. 29, 2016).

"A plaintiff can establish a FHA discrimination claim under a theory of disparate treatment or disparate impact." Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir. 1999). Disparate treatment discrimination claims brought under the FHA are subject to the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, a plaintiff must first make a prima facie case of discrimination. If the plaintiff succeeds, the burden

shifts to the defendant to articulate a legitimate reason for the discriminatory conduct. <u>McDonnell Douglas</u>, 411 U.S. at 802. If the defendant articulates such a reason, the burden again shifts back to the plaintiff to show that the reason offered by the defendant was merely a pretext for discrimination. <u>Id.</u> To state a prima facie case for discrimination under § 3604(b), a plaintiff must demonstrate: (1) that they are a member of a protected class; (2) that they suffered adverse treatment in regards to housing; and (3) the protected class was in part a motivating factor for the adverse treatment. <u>Harris</u>, 183 F.3d at 1051. "Establishing the prima facie case affords the plaintiff a presumption of discrimination." <u>Id.</u>

The provisions of FEHA at issue in this case protect substantially the same rights as the relevant FHA provisions and are subject to the same analysis. [2] <u>Walker v. City of Lakewood</u>, 272 F.3d 1114, 1131 n. 8 (9th Cir. 2001) ("Because we apply the same standards to FHA and FEHA claims, [citation], the <u>McDonnell Douglas</u> analysis applies to the FEHA claim as well."); <u>Cabrera v. Alvarez</u>, 977 F. Supp. 2d 969, 975 (N.D. Cal. 2013); <u>see also</u> <u>Guz v. Bechtel Nat'l, Inc.</u>, 24 Cal.4th 317, 354 (2000) (noting that because state and federal discrimination laws are similar, California courts look to pertinent federal precedent in applying California statutes). Accordingly, these claims will be addressed together. <u>See</u> <u>Inland Mediation Bd. v. City of Pomona</u>, 158 F. Supp. 2d 1120, 1150 (C.D. Cal. 2001) ("[T]o the extent that the provisions of FEHA address the same rights as the provisions of the FHA, and to the extent that the Court has found that Plaintiffs have raised triable issues of fact as to their FHA claims, Plaintiffs have also raised triable issues of fact with respect to the corresponding FEHA claims.").

### i. Race and National Origin

Defendants argue that Plaintiffs fail to state a claim for discrimination on the basis of race or national origin because they allege no facts connecting Defendants' purported failure to provide

---

[2] Government Code Section 12955 states that it is unlawful for "the owner of any housing accommodation to discriminate against or harass any person because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, or genetic information of that person." <u>Patton v. Hanassab</u>, No. 14CV1489 AJB WVG, 2015 WL 589460, at *4 (S.D. Cal. Feb. 12, 2015);

Case No.: 5:16-cv-04434-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

necessary repairs and maintenance with Plaintiffs' race or national origin. MTD at 8.

The court disagrees. At this stage, Plaintiffs have plead facts giving rise to a facially plausible claim that Plaintiffs' race or national origin was a motivating factor in Defendants' conduct. Plaintiffs allege that "[a]ll or almost all of the residents of the Gilroy Complexes identify as Latino," and the majority of the residents are of Mexican descent. FAC ¶ 33. Plaintiffs allege that the Gilroy Complexes are rife with dangerous, unsanitary, and uninhabitable conditions, including infestations of rats, mice, roaches, and bedbugs, sewage back-ups and plumbing leaks, lack of operating heaters, pervasive mold, and rotting walkways. FAC ¶¶ 34, 42, 51, 55, 66, 73, 80. Plaintiffs assert that residents "regularly make repair requests and complaints about their respective units' habitability problems" to Defendants, but Defendants "largely ignore" complaints and repair requests at the Gilroy Complexes. FAC ¶¶ 35, 42-44, 51-52, 55-60, 66-68. In contrast, based on a survey Project Sentinel conducted in connection with this case, Plaintiffs allege that "the majority of responsive households at the Cupertino property stated that there were no maintenance issues in their units" and indicated that "they were satisfied with the time it took for repairs to be made." FAC ¶ 76. Plaintiffs represent that the Cupertino Property is made up East Asian, Indian, and White residents, and has no known Latino households. FAC ¶ 77. Plaintiffs contend that "the only apparent reason for the difference in maintenance of the properties appears to be the national origin and race of the tenants at the two properties." Opp. at 9-10.

Defendants encourage the court to disregard the comparison Plaintiffs draw between the Gilroy Complexes and the Cupertino apartments because the properties have different ownership. Id. at 7-8. Specifically, Defendants argue that "David Tsai, the owner of the Gilroy Complexes has no ownership in the Cupertino apartment complexes, and therefore, these Cupertino properties have no bearing on or relation to the action at hand." Id. However, this argument is significantly less persuasive given that David Tsai and Undine Tsai appear to be a married couple,[3] both of

---

[3] See RJN, Exs. A-C, Dkt. No. 41 (showing that David and Undine Tsai transferred their respective legal interests in the specified properties to one another through "intra-spousal transfers"); see also Opp. at 5 (referring to the intra-spousal property transfers between David and

Case No.: 5:16-cv-04434-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

whom participate in the management of the relevant complexes – a point Defendants neglect to address when arguing that the apartments are "unassociated" and should be ignored by the court. See id. at 7-8; RJN, Exs. A-C; FAC ¶¶ 2, 13-14, 16, 75, 109.[4]

Construing the allegations in the light most favorable to Plaintiffs, the court finds that Plaintiffs have plead facts sufficient to state a claim for discrimination on the basis of race and national origin under FEHA and the FHA. Accordingly, Defendants' Motion to Dismiss is DENIED as to claims Two and Four.

### ii. Family Status

Plaintiffs also allege that Defendants discriminated against them on the basis of family status by prohibiting kids at the Gilroy Complexes from playing outside on the property, enforcing rules arbitrarily against kids, and creating such a hostile environment towards kids that it precludes families with children from having equal use and enjoyment of the property. FAC ¶¶ 3, 94, 100.

Defendants argue that Plaintiffs have not made a prima facie case of discrimination because they failed to show that they were subjected to "facially discriminatory rules which treat children, and thus, families with children, differently and less favorably than adults-only households." MTD at 10. They argue that Plaintiffs have not identified a written policy or a "hard and fast rule" entirely barring children from playing outside. Id. at 10-11. Rather, Defendants assert that the instances where Defendant Shang Shen has stopped children from engaging in certain activities, or the posted sign prohibiting skateboarding, bicycle riding, roller-skating, rollerblading, and ball playing are "limited restrictions [that] do not rise to the level necessary to support a claim under discrimination based on familial status." Id. at 11. They maintain that these are "not blanket restriction[s] stopping children from all play in common

---

Undine Tsai as having been made to "his wife" and "her husband").

[4] At the hearing on the instant Motion, counsel for both parties offered various additional facts that they each contend had come to light during discovery. While the court is not inclined to consider facts not alleged in either of the parties pleadings or raised in the briefings for the purposes of this Motion, the court notes that the parties acknowledged that David Tsai is presently in poor health, and that this may also be a relevant consideration when evaluating Undine Tsai's managerial involvement with the properties.

Case No.: 5:16-cv-04434-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

areas," but instead are "reasonable restrictions as to what activities the children cannot engage in to protect the children's health and well-being and that of other tenants of the complex." Id. Finally, Defendants argue that even if Plaintiffs had sufficiently alleged that the policy limited children's activities, such limitations on activities in the common area are narrowly tailored and are based on a legitimate business necessity as allowed for by California law.

To the extent that Plaintiffs' claim is based on a *policy* at the Gilroy Complexes, the court agrees that Plaintiffs fail to make a prima facie case of discrimination. Plaintiffs allege that Defendants discriminated on the basis of family status by arbitrarily enforcing facially neutral policies in such a way as to only harm families with children. However, unlike the cases cited by Plaintiffs, where an express policy limiting or prohibiting children from engaging in certain activities was identified and challenged by the plaintiff-families, here, Plaintiffs do not identify a facially discriminatory policy; they allege instances where Defendant Shang Shen prevented their children from playing in a particular place or manner. Plaintiffs have not alleged that Defendants "prohibited" all children from using the common areas, nor have they offered any examples illustrating how any purported policy impacted children differently than adults.

However, Plaintiffs have alleged facts on which a jury could find that Defendants created a hostile environment for children and/or families with children. As of October 2016, the HUD's Code of Federal Regulations expressly states that discriminatory conduct under the FHA may include hostile environment harassment. 24 C.F.R. § 100.600. The regulation provides,

> Hostile environment harassment refers to unwelcome conduct that is sufficiently severe or pervasive as to interfere with: The availability, sale, rental, or use or enjoyment of a dwelling; the terms, conditions, or privileges of the sale or rental, or the provision or enjoyment of services or facilities in connection therewith; or the availability, terms, or conditions of a residential real estate-related transaction. Hostile environment harassment does not require a change in the economic benefits, terms, or conditions of the dwelling or housing-related services or facilities, or of the residential real estate transaction.

24 C.F.R. § 100.600(a)(2). Whether a hostile environment exists "depends upon the totality of the circumstance," and should consider factors such as "the nature of the conduct, the context in

Case No.: 5:16-cv-04434-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

which the incident(s) occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved." Id. § 100.600(a)(2)(i)(A). "Whether unwelcome conduct is sufficiently severe or pervasive as to create a hostile environment is evaluated from the perspective of a reasonable person in the aggrieved person's position." Id. § 100.600(a)(2)(i)(C).

Here, Plaintiffs allege facts that, if true, suggest Defendants' actions went beyond minimal restrictions and instead were oppressive and hostile to children and families with children. Specifically, Plaintiffs allege that on August 2, 2016, Defendant Shang Shen yelled at their children for playing hide and seek outside, and told them to leave the common area and return to their own yard. FAC. ¶ 64. When the children went to their own backyard space, Plaintiffs allege that Shang Shen yelled at them again and told them that they should be playing inside. Plaintiffs contend that Shang Shen regularly engages in this kind of behavior, forcefully telling Plaintiffs' children not to play outside and not to make noise. FAC ¶¶ 31, 41. Plaintiffs also allege that they were ordered to remove a basketball hoop in their own yard to prevent children from playing outside, and have witnessed Shang Shen taking balls and toys away from the children. FAC ¶¶ 30-31, 63. Plaintiffs further allege that Defendant Shang Shen even went as far as to nail shut Ms. Ortiz and Mr. Robles' fence to prevent their children from accessing the common areas. FAC. ¶ 62. Based on these persistent behaviors, among others, Plaintiffs assert that their children are afraid of Defendant Shang Shen, that they "usually retreat indoors with their toys when they see him approach," and that "[s]ome children completely avoid playing outdoors at the Gilroy Complexes in order to avoid Mr. Shen." FAC ¶ 31. Drawing all reasonable inferences in Plaintiffs' favor, and based on the totality of the circumstances, Plaintiffs have alleged that Defendants perpetrated "unwelcome conduct" of sufficient severity to interfere with Plaintiffs' use or enjoyment of their property, or "the provision or enjoyment of services or facilities in connection therewith." See 24 C.F.R. § 100.600(a)(2). Plaintiffs have therefore stated a claim for discrimination on the basis of family status under the theory of "hostile environment harassment."

United States District Court
Northern District of California

Accordingly, Defendants' Motion to Dismiss claims one and three for discrimination on the basis of family status is GRANTED to the extent the claims are based on an allegedly discriminatory policy, and DENIED to the extent the claims are based on Defendants' creation of a hostile environment. Dismissal is granted WITH LEAVE TO AMEND.

### C. Unruh Civil Rights Act (Cal. Civ. Code § 51)

California's Unruh Civil Rights Act affords broad protection against discrimination, providing that all persons, regardless of sex, race, color, religion, ancestry, national origin, disability, or medical condition, are entitled to "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51. The Act prohibits landlords from discriminating against potential or existing tenants on the basis of national origin, and has been interpreted to similarly preclude such discrimination against children and families with children. Id. § 51(b); §51.2; Marina Point, Ltd. v. Wolfson, 30 Cal. 3d 721, 731, 736 (1982) (explaining that "the provisions of the Unruh Act, in light of its broad application to 'all business establishments', have been held to apply with full force to the business of renting housing accommodations."); Swann v. Burkett, 209 Cal. App. 2d 685 (1962) (holding that owners who rented out a private triplex unit for gain were subject to the Unruh Act, even though they employed no persons to assist them in the rental or maintenance of the property and maintained no office).

Defendants move to dismiss Plaintiffs' Unruh Act claim on the same basis as they move to dismiss Plaintiffs' discrimination claims. See MTD at 12 ("Because Plaintiffs failed to allege sufficient facts to support a claim for discrimination under the FHA or the FEHA, Plaintiffs have failed to plead sufficient facts to support a claim under the Unruh Act (i.e. if Plaintiffs cannot establish discrimination by Defendants against Tenant Plaintiff in the operation of the property, a business establishment, they will be unable to maintain an action under the Unruh Act)"). Defendants offer no independent challenge to this cause of action. Accordingly, because the court found that Plaintiffs had adequately stated a claim for discrimination under the FHA and FEHA,

14

the court similarly concludes that Plaintiffs have adequately alleged violations of the Unruh Act as well. Defendants' Motion to Dismiss Plaintiffs' Fifth Cause of Action is therefore DENIED.

### D. Retaliation Claims

Plaintiffs' Sixth, Seventh, and Eighth causes of action assert that Defendants violated section 3617 of the FHA, section 12955.7 of FEHA, and California Civil Code section 1942.5 by retaliating against the Jimenez Family for (1) making complaints about the substandard condition of the property, meeting with legal representatives from the Law Foundation of Silicon Valley regarding their housing rights, and attempting to exercise such rights in connection with their tenancy at the Gilroy Complexes. See FAC ¶¶ 35, 37, 39, 43, 47, 48, 52, 56-57, 67, 72-73, 119, 127-128. In the interest of clarity, it is worth emphasizing that only the Jimenez Family asserts retaliation claims against Defendants.

The FHA provides that it "shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, any right granted or protected by [42 U.S.C. § 3604]." 42 U.S.C. § 3617. The McDonnell Douglas burden-shifting analysis also applies to FHA retaliation claims. Walker, 272 F.3dat 1128; see McDonnell Douglas, 411 U.S. at 802. "To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." Id. (citing Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir.1994). As with a discrimination claim, if the plaintiff succeeds in making a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the alleged retaliatory conduct. McDonnell Douglas, 411 U.S. at 802. "If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." Walker, 272 F.3d at 1128. FEHA, the analogous state law to the FHA, affords like protections against retaliation and is subject to the same analysis. Id.; Cal. Gov't Code § 12955.7. Similarly, California Civil Code 1942.5 prohibits landlords from retaliating against

tenants because the tenant exercised his or her rights or brought a complaint "as to tenantability of a dwelling." Cal. Civ. Code § 1942.5(a). Section 1942.5 specifically identifies evicting a tenant, increasing rent, and decreasing any services as potentially retaliatory actions, and generally precludes a landlord from taking such actions within 180 days of a tenant's protected activity.[5] Id.

Here, Defendants argue that the timeline of events in this case fail to establish that any allegedly retaliatory action taken by Defendants was made in response to any action by Plaintiffs, and Plaintiffs therefore fail to demonstrate a causal link between the protected activity and the adverse action. However, the isolated examples Defendants offer in support of this argument are unpersuasive in light of all the factual allegations actually asserted in this case.

The Jimenez Family's retaliation claims are primarily based on Defendants' termination of their tenancy and subsequent unlawful detainer action against them. In relevant part, Plaintiffs allege that on April 27, 2016, legal representatives from the Law Foundation of Silicon Valley visited the premises to investigate the conditions on the property. FAC ¶ 46. Forty-one days later, on June 7, 2016, Defendants served a 60-day notice of termination of tenancy served on the Jimenez Family.[6] Id. And one day after that, on June 8, 2016, Undine Tsai came to the Jimenez Family's apartment and inquired as to whether any lawyers had come to ask them about the conditions of their unit. Id. The Jimenez Family alleges that Defendants terminated their tenancy

_____

[5] Section 1942.5(e) identifies a limited exception to Section (a)'s bar on certain actions within the 180 day time frame, providing:

> Notwithstanding subdivisions (a) to (d), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (c), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (c). If the statement is controverted, the lessor shall establish its truth at the trial or other hearing.

[6] Also in April 2016, the Jimenez Family alleges that they complained for the second time about a leak in the bathroom ceiling that caused so much water to collect on the bathroom floor that Ms. Jimenez slipped and fell. Both the leak and Ms. Jimenez' injuries were reported to the Defendants after each incident. FAC ¶ 44.

16

in retaliation for their numerous complaints regarding the poor condition of the property and their consultation with the Law Foundation regarding the same. With the help of an attorney from the Law Foundation, on July 13, 2016 the Jimenez Family sent a letter to Defendants seeking rescission of the 60-day notice on the basis that it was retaliatory. Id. ¶ 47. On July 19, 2016, Defendants responded in writing that the termination was not retaliatory, and listed alternative reasons for the termination that were not included in the original "no-cause" notice. Id.

Defendants argue that prior to visiting the Jimenez Family on June 8, 2016, Undine Tsai "clearly had no idea that Plaintiffs had been meeting with lawyers from the Law Foundation," and therefore the 60-day notice of termination could not be retaliation for these meetings. MTD at 14; see Reply at 10. Defendants contend that Undine Tsai's purported lack of prior knowledge is evidenced by the fact that the notice of termination of tenancy was served before Undine Tsai met with the Jimenez Family. See Reply at 10. However, as the Jimenez Family suggests, an equally plausible explanation is that the very reason Undine Tsai specifically asked whether they had spoken with lawyers about the condition of the property is because she knew or suspected such conversations had taken place. Drawing all reasonable inferences in favor of Plaintiffs at this stage, the court finds that the FAC alleges a causal connection between the Jimenez Family's protected activity (consulting with legal counsel about their housing rights) and Defendants' adverse action (terminating their tenancy). Plaintiffs have therefore stated a prima facie case of retaliation.

Defendants then seek to rely on the July 19 letter, wherein their counsel provided alternative explanations for terminating the Jimenez Family's tenancy, in an effort to show that there were legitimate, non-retaliatory reasons for their action. See Reply at 10. However, other than representing that the letter identifies alternative reasons for their action, Defendants offer no further details of what those reasons are, or what the reasons are based on. Id.; see also MTD at 15 (referencing July 19 letter and stating "[t]here are many lawful reasons for which a family may be evicted, and evidently this reason was provided to Plaintiffs."). Indeed, merely asserting that

they had "alternative bases" for their action that "had nothing to do with retaliation" is wholly inadequate.

In the FAC, Plaintiffs allege that Defendants further retaliated against them in response to their filing of *this* lawsuit. This action was filed on August 5, 2016, and Defendants' counsel was sent a copy of the original complaint (Dk. No. 1). FAC ¶ 48. Nevertheless, Plaintiffs allege that on August 16, 2016, only 11 days after Defendants were provided with a copy of the original complaint, Defendant David Tsai filed an unlawful detainer action against the Jimenez Family. FAC ¶ 49. Defendants argue that this was not retaliatory, as eviction proceedings were the natural progression of the process Defendants initiated on June 7, 2016 when they first served the Jimenez Family with the 60-day notice of termination. The court agrees that Defendants' initiation of an unlawful detainer action does not establish an *independent* basis for a retaliation claim under the facts currently in the record. Rather, whether proceeding with the eviction of the Jimenez Family was retaliatory depends on whether terminating their tenancy was retaliatory. Because the court finds that Plaintiffs adequately plead retaliation as to the termination of tenancy, Plaintiffs' allegations regarding the unlawful detainer action similarly thrive as part of the overall factual basis for the retaliation claims asserted.

Based on the foregoing, the court concludes that, based on the facts alleged, a jury could find that Defendants retaliated against the Jimenez Family in violation of the FHA, FEHA, and Civil Code section 1942.5. Defendants' Motion to Dismiss is therefore DENIED as to claims six, seven, and eight.

### E. Project Sentinel Lacks Article III Standing

Project Sentinel is named as a plaintiff in this case in connection with the First, Second, Third, and Fourth causes of action. Defendants argue that Project Sentinel's lacks standing under Article III because it has not suffered an injury-in-fact. The court agrees.

In Havens Realty Corporation v. Coleman, the Supreme Court set forth that a fair housing organization establishes standing when it suffers "a concrete and demonstrable injury with a

United States District Court
Northern District of California

consequent drain on the organization's resources." Havens, 455 U.S. at 370. The Ninth Circuit has held that damages to a fair housing organization may be sufficient to satisfy the injury in fact requirement and thus confer organizational standing where it can demonstrate: "(1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question." Smith v. Pac. Properties & Dev. Corp., 358 F.3d 1097, 1105 (9th Cir. 2004) (citing and reaffirming its decision in Fair Housing of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002)). "Frustration of mission" damages are the costs that a fair housing organization will be required to expend in order to rectify or counterbalance the negative impact of a defendant's discriminatory actions on the organization's non-economic interests – for example, its interest in ensuring fair and equal treatment of tenants. Southern California Housing Rights Center v. Krug, 564 F. Supp. 2d 1138, 1152 (C.D. Cal. 2007); Havens, 455 U.S. at 379 n. 20. "Diversion of resources" damages are cognizable where an organization is forced to divert time and resource away from its regular – or "core" – programs in order to undertake the particular case. See Fair Hous. of Marin v. Combs, No. C 97-1247 MJJ, 2000 WL 365029, at *3 (N.D. Cal. Mar. 29, 2000), aff'd, 285 F.3d 899 (9th Cir. 2002)

Here, Plaintiffs contend that Project Sentinel satisfies the injury in fact requirements as outlined by the Ninth Circuit in Pacific Properties and Combs. First, Plaintiffs allege that Project Sentinel's mission is to "develop and promote fairness and equality of housing for all persons" and to eliminate "all forms of illegal discrimination. FAC ¶ 12. Because Project Sentinel "plans to expend future costs to conduct further education and outreach to the Latino community in order to counteract Defendants' discriminatory and predatory behavior," Plaintiffs argue that the organization is entitled to "frustration of mission" damages. Opp. at 18-19.

Absent more, these allegations fail to plead a cognizable harm to Project Sentinel's mission. Plaintiffs fail to explain how Defendants' conduct toward the tenant-Plaintiffs in this case – even if "discriminatory and predatory," as Plaintiffs allege – actually frustrates Project Sentinel's broader organizational purpose. To constitute an injury under this theory, a defendant's conduct

19

must do more than offend the priorities and principles of the organization; it must result in an actual impediment to the organization's real-world efforts on behalf of such principles. See Havens, 455 U.S. at 378-79 (finding organization had suffered injury in fact where the defendant's practices "perceptibly impaired" the organization's ability to provide counseling and referral services, explaining that "[s]uch concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests."); Walker, 272 F.3d at 1124 (finding fair housing service provider had standing based on allegations that city had injured its ability to carry out its purposes by retaliating against it in response to its advocacy efforts, delaying payments due, attempting to interfere with provider's investigation of fair housing complaints, and filing allegedly frivolous third party claim against provider); Project Sentinel v. Evergreen Ridge Apartments, 40 F. Supp. 2d 1136, 1139 (N.D. Cal. 1999) (rejecting standing where complaint alleged "nothing more than a setback to the organization's abstract social interest in gaining compliance with fair housing laws," explaining that the plaintiff had failed to assert that the organization "provide[d] any service or [] engaged in any other enterprise independent of th[e] action that might be frustrated by defendants' allegedly unlawful conduct"). Plaintiffs have not alleged any such impediment to Project Sentinel's work here.

Plaintiffs similarly fall short in demonstrating that Project Sentinel's efforts in this action resulted in a significant diversion of resources. Plaintiffs assert that "in order to monitor the violations and educate the public regarding the discrimination at issue, [Project Sentinel] had to divert its scarce resources from other efforts to provide outreach and education to the community." Opp. at 19; FAC ¶ 78. Specifically, Plaintiffs highlight that Project Sentinel directed a door-to-door survey of tenants at the Gilroy Complexes regarding housing conditions and treatment by the landlord (FAC ¶ 71) and "conducted a presentation in Gilroy to Latino residents to inform them of their fair housing rights and [] to educate them on national origin and familial status discrimination" (FAC ¶ 78). Opp. at 19-20.

However, Plaintiffs fail to explain how any of the aforementioned efforts extended beyond the normal, day-to-day work regularly undertaken by Project Sentinel. Moreover, Plaintiffs have offered no concrete details regarding the "significant resources" that it claims have been and will continue to be diverted as a result of Defendants' practices. Unlike in <u>Fair Housing of Marin v. Combs</u>, where the plaintiff-organization (FHOM) explained how the prevalence and numerous complaints regarding the defendant's behavior "caused it to divert time and resources from its planned education and counseling programs to embark on a prolonged investigation of the extent and nature of discrimination," Project Sentinel offers no such explanation here. <u>See</u> 2000 WL 365029, at *3. And, while FHOM identified the specific costs and monetary values for the resources it claimed had been diverted, Project Sentinel has offered no details regarding the resources that were allegedly diverted as a result of its efforts in this case. <u>See id.</u> Indeed, there is nothing in Plaintiffs' FAC or briefing to suggest that Project Sentinel's work in connection with this action went above or beyond its typical work efforts in the community. As the district court aptly summarized in <u>Project Sentinel v. Evergreen Ridge Apartments</u>, "Plaintiff cannot manufacture standing by first claiming a general interest in lawful conduct and then alleging that the costs incurred in identifying and litigating instances of unlawful conduct constitute injury in fact." <u>Project Sentinel v. Evergreen Ridge Apartments</u>, 40 F. Supp. 2d 1136, 1139 (N.D. Cal. 1999).

In light of these deficiencies, Project Sentinel has failed to establish an injury in fact and thus lacks Article III standing. Accordingly, Defendants' Motion to Dismiss is GRANTED with respect to Project Sentinel only as to the First, Second, Third, and Fourth causes of action. These claims are dismissed WITH LEAVE TO AMEND.

## IV.    ORDER

Based on the foregoing, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART as follows:

1.    The Motion is to Dismiss all claims against Defendant Undine Tsai as an improper

United States District Court
Northern District of California

party is DENIED.

2.      The Motion to Dismiss Project Sentinel for lack of Article III standing in connection with the First, Second, Third, and Fourth causes of action is GRANTED.

3.      The Motion is DENIED as to the Second and Fourth causes of action asserting discrimination on the basis of race and national origin in violation of the FHA and FEHA.

4.      As to the First and Third causes of action asserting discrimination on the basis of family status in violation of the FHA and FEHA, the Motion is GRANTED to the extent the claims are based on an allegedly discriminatory policy, and DENIED to the extent the claims are based on Defendants' creation of a hostile environment.

5.      The Motion is DENIED as to the Fifth cause of action asserting violation of California Unruh Civil Rights Act, Cal. Civ. Code § 51.

6.      The Motion is DENIED as to the Sixth, Seventh, and Eighth causes of action asserting retaliation in violation of the FHA, FEHA, and California Civil Code section 1942.5.

7.      All claims subject to dismissal are dismissed WITH LEAVE TO AMEND. And amended complaint shall be filed no later than **July 7, 2017**.

**IT IS SO ORDERED.**

Dated: June 5, 2017

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-04434-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS