UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ISMAEL JIMENEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DAVID Y TSAI, et al., <br><br> Defendants. | Case No. 5:16-cv-04434-EJD <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO STRIKE; DENYING MOTION FOR ADMINISTRATIVE RELIEF** <br><br> **RE: DKT. NO. 67, 89** |

## I. INTRODUCTION

Plaintiffs[1] are four low-income Latino families residing at apartment complexes in Gilroy, California. Plaintiffs bring this action on behalf of themselves and their minor children, against the property owner, David Tsai, and property managers, Undine Tsai and Shang Shen (collectively, "Defendants"), for damages arising from the poor living conditions at the apartment complexes. Plaintiffs allege that Defendants' continued failure to properly maintain or make necessary repairs to the property violates the Federal and California Fair Housing Act ("FHA") and gives rise to related state law claims. Presently before the court is Defendants' motion to dismiss Project Sentinel's claims for lack of standing and to strike certain allegations in the Second Amended Complaint ("SAC"). The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the

---

[1] Plaintiffs include individuals Ismael Jimenez, Yolanda Jimenez, Angeles Jimenez, Antonio Jimenez, Carmentina Herrera, Luis Alvarez, Ebaristo Alavez, Josefa Jimenez, Jesucita Ortiz, and Rodolfo Robles, as well as Project Sentinel, a California non-profit corporation, that joins in bringing this action on behalf of itself and the general public.

1

Case No.: 5:16-cv-04434-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO STRIKE; DENYING MOTION FOR ADMINISTRATIVE RELIEF

reasons set forth below, Defendants' motion to dismiss is denied and the motion to strike is denied.

## II. BACKGROUND

The individual Plaintiffs are self-described "low income Latino residents" of apartment complexes located at either 611 E. 7th Street or 590 Stoney Court in Gilroy, California (collectively "the Gilroy Complexes"). Project Sentinel is a non-profit California corporation with its principal place of business in Santa Clara, California. SAC ¶ 12 "Project Sentinel's organizational mission includes the promotion of equal opportunity in rental housing and the elimination of all forms of housing discrimination." Id. Project Sentinel engages in several different activities to further its mission, including "providing community education and outreach programs regarding fair housing, conducting training programs for housing industry professionals, and providing fair housing counseling and referral services." Id.

Plaintiffs allege that residents at the Gilroy Complexes have long endured unsanitary and unsafe living conditions including, *inter alia*, infestations of rats, mice, roaches, and bedbugs; serious sewage back-ups and plumbing leaks; lack of operating heaters; pervasive mold, especially in bathrooms; dangerous electrical problems; unsecured locks on the doors; inadequate lighting, and loose railings and rotting second floor walkways. SAC ¶¶37, 45, 54, 58. Plaintiffs allege that despite knowing of these persistent unhealthy and unsafe conditions, Defendant owner David Tsai and Defendant property managers Undine Tsai and Shang Shen largely ignored Plaintiffs' numerous requests for repairs and complaints regarding the habitability of their apartment units. Id. at ¶38.

Apart from their concerns regarding the conditions of the property, Plaintiffs also contend that Defendants maintain a hostile environment for children. Id. at ¶¶33, 65-68. Defendant Shang Shen allegedly regularly tells children not to play outside in the common areas of the complex. Id. at ¶33. Plaintiffs have allegedly witnessed Shang Shen telling children playing outside not to play ball or ride bikes or scooters. Id. Plaintiffs have also allegedly witnessed Shang Shen taking away the balls of children playing in the common areas of the complex. Id. The children of the

ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO STRIKE; DENYING MOTION FOR ADMINISTRATIVE RELIEF

individual Plaintiffs are allegedly afraid of Shang Shen and usually retreat indoors with their toys when they see him approach. Id. at ¶34. Plaintiffs further allege that Defendants maintain signs at 611 E. 7th Street that read, "NO SKATEBOADING[,] BICYCLE RIDING[,] ROLLERSKATING[,] ROLLERBLADING[,] BALL PLAYING" in order to discourage children from playing outdoors. Id. at ¶35. Plaintiffs allege that Defendants only enforce these rules against children. Id.

In approximately September 2015, the owners of the Gilroy Complexes issued a notice of rent increase to all residents at 590 Stoney Court. Sometime after they received the rent increase notices, a group of Stoney Court residents organized and met with Defendant David Tsai who allegedly promised to begin making repairs in January 2016. Id. at ¶42. As of the filing of the Second Amended Complaint, however, the allegedly promised repairs have not been made or have been made inadequately. Id.

In approximately March of 2016, Project Sentinel received reports of possible discrimination at the Gilroy complexes. Id. at ¶73. As a result of those reports, Project Sentinel opened an investigation into Defendants' business practices. Id. In March 2016, Project Sentinel surveyed tenants at the complex located at 611 E. 7th Street in Gilroy. Id. at ¶74. Trained fair housing surveyors walked door-to-door in the complex to speak with adult tenants. Id. Tenants allegedly reported that Defendants, particularly Defendant Shang Shen, regularly told parents not to let their children play outside. Id. at ¶75. Tenants also allegedly told Project Sentinel that Defendants failed to make repairs in a timely manner, if repairs were made at all. Id. at ¶76. Tenants also allegedly complained of vermin in their units, including roaches, spiders, and bedbugs. Id. Many tenants allegedly stated that they did not have heat in their units. Id. After the survey, Defendants allegedly questioned tenants of the Gilroy Complexes whether they had opened their doors to lawyers asking about the conditions of their units. Id. at ¶77.

A couple months later, Project Sentinel surveyed another apartment complex owned and operated by Defendant Undine Tsai located in Cupertino, California. Id. at ¶78. The wide majority of tenants at the Cupertino complex allegedly reported that there were no maintenance

ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO STRIKE; DENYING MOTION FOR ADMINISTRATIVE RELIEF

issues in their units. Id. at ¶79. In the course of the survey at the Cupertino apartment complex, "Project Sentinel found East Asian, Indian and White households," but no Latino households. Id. at ¶80.

### III. STANDARDS

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the… claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 556-57. A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal of a claim under Rule 12(b)(6) may be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988); see Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

At the motion to dismiss stage, the court must read and construe the complaint in the light most favorable to the non-moving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. "In all cases, evaluating a complaint's plausibility is a context-specific endeavor that requires courts to draw on ... judicial experience and common sense." Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Pursuant to Fed.R.Civ.P. 12(f), a court may strike from the complaint any "redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010). A motion to strike will only be granted if "it is clear that the matter to be stricken could

ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO STRIKE; DENYING MOTION FOR ADMINISTRATIVE RELIEF

have no possible bearing on the subject matter of the litigation." Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc., 870 F.Supp.2d 1015, 1040 (D. Hi 2012); see also Oracle v. Micron Tech., Inc., 817 F.Supp.2d 1128, 1132 (N.D. Cal. 2011) ("A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action.").

## IV. DISCUSSION

### A. Project Sentinel

Project Sentinel is named as a plaintiff in connection with the First, Second, Third, and Fourth claims. The Court granted Defendants' earlier-filed motion to dismiss Project Sentinel's claims for lack of standing under Article III with leave to amend. The Court finds that the additional allegations in the Second Amended Complaint now provide a sufficient basis to establish standing at the pleading stage.

In Havens Realty Corporation v. Coleman, 455 U.S. 363, 370 (1982), the Supreme Court stated that a fair housing organization establishes standing when it suffers "a concrete and demonstrable injury with a consequent drain on the organization's resources." The Ninth Circuit has held that damages to a fair housing organization may be sufficient to satisfy the injury in fact requirement and thus confer organizational standing where it can demonstrate: "(1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question." Smith v. Pac. Properties & Dev. Corp., 358 F.3d 1097, 1105 (9th Cir. 2004) (citing and reaffirming its decision in Fair Housing of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002)). "Frustration of mission" damages are the costs that a fair housing organization will be required to expend in order to rectify or counterbalance the negative impact of a defendant's discriminatory actions on the organization's non-economic interests – for example, its interest in ensuring fair and equal treatment of tenants. Southern California Housing Rights Center v. Krug, 564 F. Supp. 2d 1138, 1149 (C.D. Cal. 2007); Havens, 455 U.S. at 379, n. 20.

"Diversion of resources" damages are cognizable where an organization is forced to divert time and resources away from its regular – or "core" – programs in order to undertake the particular case. See Fair Housing of Marin v. Combs, No. C 97-1247 MJJ, 2000 WL 365029, at

ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO STRIKE; DENYING MOTION FOR ADMINISTRATIVE RELIEF

*3 (N.D. Cal. Mar. 29, 2000), aff'd, 285 F.3d 899 (9th Cir. 2002) (diversion of resources damages awarded to compensate organization for time investigating and litigating; for tester training, recruitment, and conducting tests at site of alleged housing law violation; and cost associated with formation of and participation in the Marin County Board of Supervisors' Task Force on Housing Discrimination).

A. Frustration of Mission Damages

Citing Project Sentinel v. Evergreen Ridge Apartments, 40 F.Supp.2d 1136 (N.D. Cal. 1999), Defendants contend that Project Sentinel has failed to allege frustration of mission damages. More specifically, Defendants argue that Project Sentinel has failed to allege an injury independent of its decision "to divert resources away from the pursuit of its abstract goals to support this suit." Id. at 1140. Defendants reason that because Project Sentinel's mission is to investigate housing violations and provide counseling, the organization cannot claim it was injured by choosing to expend resources on these standard day-to-day activities. In other words, Defendants contend that Project Sentinel cannot recover frustration of mission damages because the expenditure of resources it seeks to claim as injury is "precisely what its resources are earmarked for." Defendants' Reply Brief at p. 3. Defendants contend that Project Sentinel can only recover frustration of mission damages for resources expended on activities that are "outside the scope" of its mission. Id.

The Court rejects Defendants' argument that Project Sentinel can only recover frustration of mission damages for resources expended on activities that are outside the scope of its mission. In Havens, supra, a fair housing organization called Housing Opportunities made Equal ("HOME"), whose purpose was to make equal opportunity in housing a reality in the Richmond Metropolitan Area, asserted a claim for violation of the Fair Housing Act. HOME's regular activities included "the operation of a housing counseling service, and the investigation and referral of complaints concerning housing discrimination." Havens, 455 U.S. at 368. HOME alleged the following claims of injury to the organization:

Plaintiff HOME has been frustrated by defendants' racial steering

ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO STRIKE; DENYING MOTION FOR ADMINISTRATIVE RELIEF

> practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's [sic] racially discriminatory steering practices.

Havens, 455 U.S. at 379. The Supreme Court reasoned, "[i]f, as broadly alleged, [defendant's] steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact." Id. The Havens Court further reasoned, "[s]uch a concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests." Id. (citing Sierra Club v. Morton, 405 U.S. 727, 739 (1972)). Thus, HOMES' frustration of mission injuries were directly related to and fell within the scope of HOMES' regular activities: counseling and referral.

In Fair Housing of Marin v. Combs, supra, the Ninth Circuit held that the Fair Housing of Marin ("FHOM"), a non-profit organization, had standing to assert claims for illegal housing discrimination on the basis of race. The organization's stated mission was to promote equal housing opportunities. To further this mission, the organization provided outreach and education to the community regarding fair housing, investigated allegations of discrimination, conducted testing of housing facilities, and took such steps as it deemed necessary to assure equal opportunity in housing and to counteract and eliminate unlawful discriminatory housing practices. Upon receiving complaints that defendant Combs was discriminating, the organization conducted two sets of controlled tests, which showed that Combs discriminated against black applicants. The Ninth Circuit affirmed the trial court's award of "frustration of mission damages" for "design, printing, and dissemination of literature aimed at redressing the impact Combs' discrimination had on the Marin housing market." Id. Thus, FHOM's frustration of mission injuries were directly related to and fell within the scope of FHOM's regular activities: outreach and education.

Although frustration of mission damages may be awarded to compensate a housing organization for resources expended on activities that are within the scope of its mission, the organization must show that that the alleged unlawful acts "increased the resources the group must

ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO STRIKE; DENYING MOTION FOR ADMINISTRATIVE RELIEF

devote to programs independent of its suit challenging the unlawful action." Project Sentinel v. Evergreen Ridge Apartments, 40 F.Supp.2d at 1138. Project Sentinel's Second Amended Complaint now includes allegations to establish that Defendants' conduct caused such an increase in resources that it must devote to programs independent of its suit.

Like the HOME and FHOM organizations, Project Sentinel alleges that Defendants' discrimination harmed its organizational mission. More specifically, the Second Amended Complaint includes an allegation that Defendants' conduct harmed Project Sentinel "by impairing and frustrating its mission of identifying and eliminating discriminatory practices against people in protected classes." SAC at ¶83. Further, like FHOM, Project Sentinel alleges it incurred frustration of mission damages "through disseminating literature aimed at redressing the impact of Defendants' discrimination on the Gilroy housing market." Id. Project Sentinel also allegedly "conducted a renters rights and fair housing presentation in Spanish to community members and tenants in Gilroy on May 18, 2016 where it distributed educational brochures and flyers to provide fair housing education to families with children and Latino tenants most likely to be affected by Defendants' discriminatory conduct." Id. Project Sentinel also allegedly "distributed educational brochures (on fair housing law, familial status discrimination, and right to live in a habitable home) to several locations in Gilroy including the public library, a school district office, City Hall, and several community churches." Id. Critical to establishing standing, Project Sentinel alleges that it would not have undertaken these specific activities but for Defendants' discriminatory conduct. Id.

Further, Project Sentinel alleges that "in order to curtail Defendants' discriminatory practices and counteract the effects of these practices in the community, Project Sentinel will need to invest significant resources into monitoring the properties owned by Defendants, as well as undertaking additional education and outreach efforts in Gilroy." SAC at ¶84. Project Sentinel allegedly "must conduct regular tests to monitor the property and ensure that Defendants no longer discriminate against families with children or people of Mexican descent and/or who identify as Latino." Id. Project Sentinel alleges that it "must monitor the property by conducting a site

ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO STRIKE; DENYING MOTION FOR ADMINISTRATIVE RELIEF

survey to interview tenants to determine the demographic composition of the complex, assess whether Defendants have rectified pervasive habitability violations suffered by Latino tenants, and identify whether any families with children have experienced discrimination at the complex." Id. Project Sentinel also alleges that it must train Defendants on fair housing laws. Id.

Accepting the allegations in the Second Amended Complaint as true and drawing all reasonable inferences in its favor, the Court finds that Project Sentinel has adequately alleged frustration of mission damages based upon the expenditure of resources described above that Project Sentinel undertook or will be required to undertake because of Defendants' allegedly discriminatory conduct.

B. Diversion of Resources

Project Sentinel's allegations are also sufficient at the pleading stage to show a significant diversion of resources. In Smith v. Pacific Properties, supra, the Ninth Circuit held that the Disabled Rights Action Committee ("DRAC"), a non-profit organization promoting the rights of disabled persons in Utah and Nevada, had adequately alleged standing to assert claims for violations of the Fair Housing Amendments Act based on the following: "in order to monitor the violations and educate the public regarding the discrimination at issue, DRAC has had (and, until the discrimination is corrected, will continue) to divert its scarce resources from other efforts to promote awareness of – and compliance with – federal and state accessibility laws and to benefit the disabled community in other ways (for example, DRAC's efforts to free disabled persons from nursing homes.)." Smith, 358 F.3d at 1105.

Here, Project Sentinel similarly alleges that it has experienced a "drain on its scarce resources." SAC at ¶81. Project Sentinel alleges that "[a]s a result of Defendants' discriminatory activities, Project Sentinel was forced to invest significant financial and staff resources into investigating the subject property, including conducting three separate trips to survey the Gilroy properties, and surveying the Cupertino property to assess the extent and pervasiveness of Defendants' discriminatory conduct and to compare their treatment of non-Latino tenants and tenants without children." Id. Project Sentinel alleges that "[t]he time and money invested in

ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO STRIKE; DENYING MOTION FOR ADMINISTRATIVE RELIEF

surveying and otherwise investigating the subject property resulted in a diversion of resources from Project Sentinel's regular activities." Id. at ¶82. Project Sentinel also alleges that "[t]he time spent investigating Defendants' discriminatory conduct was almost four times the amount of time Project Sentinel spends counseling and resolving a complaint of discrimination." Id. Defendants' discriminatory conduct allegedly "forced Project Sentinel to divert its scarce resources away from other programs and activities it would have undertaken, such as counseling and referral, education programs, and outreach, to instead identify and counteract Defendants' unlawful housing practices." Id. Unlike the First Amended Complaint, the Second Amended Complaint now includes allegations explaining how Defendants' conduct allegedly caused an expenditure of resources beyond the day-to-day work regularly undertaken by Project Sentinel.

Defendants contend that Project Sentinel is required, but has failed to allege concrete details regarding the resources that were diverted or will be diverted as a result of Defendants' conduct. In Fair Housing of Marin v. Combs, supra, the FHOM itemized its claim for diversion of resources, specifying a dollar amount for four separate categories of expenses, namely the cost of investigating and litigating, the expenses incurred by FHOM employees in testing, tester recruitment and training costs, and costs associated with the formation of and participation in the Marin County Board of Supervisors' Task Force on Housing Discrimination. FHOM's itemized financial information was submitted, however, not at the pleading stage but in the context of a motion for default judgment. At the pleading stage, Project Sentinel is not required to provide detailed financial information.

B. Allegations re Discriminatory Policy

Defendants move to strike portions of the Second Amended Complaint that refer to rules barring children from playing in common areas[2] in light of the Court's earlier ruling granting Defendants' motion to dismiss Plaintiffs' First and Third Causes of action for discrimination on the basis of family status to the extent those claims were predicated on an allegedly discriminatory policy. The portions of the SAC that refer to rules do not contain redundant, immaterial,

---

[2] See SAC at ¶18, pp. 5:26-6:61, ¶93, and ¶3 under "Relief."
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO STRIKE; DENYING MOTION FOR ADMINISTRATIVE RELIEF

impertinent, or scandalous matter. Further, Defendants have not carried their burden of showing that those portions of the SAC have "no possible bearing on the subject matter of the litigation." See Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc., 870 F.Supp.2d at 1040. Therefore, Defendants' motion to strike portions of the Second Amended Complaint referring to rules is denied.

Defendants also move to strike paragraph 20 of the Second Amended Complaint, which sets forth Plaintiffs' analysis of caselaw regarding predatory or exploitive business practices in contexts other than housing. The Court agrees that paragraph 20 is immaterial to Plaintiffs' claims and accordingly is deemed stricken from the Second Amended Complaint.

## V. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is DENIED. Defendants' motion to strike allegations is GRANTED with respect to paragraph 20 of the Second Amended Complaint, and DENIED in all other respects.

Finally, Defendants' motion for administrative relief, which essentially requests that the Court vacate the Order granting the National Fair Housing Alliance ("NFHA") leave to file an *amicus curiae* brief, is DENIED. NFHA filed is motion for leave to file an *amicus curiae* brief on September 8, 2017. It was Defendants' responsibility to refer to the Local Rules to determine when their response was due, regardless of the erroneous information NFHA included in Docket Entry No. 85.

Pursuant to Local Rule 7-11, Defendants' opposition was due four days later. The NFHA's notice of errata filed on September 13, 2017, which corrected formatting errors and otherwise made no substantive changes to the *amicus curiae* brief, did not extend the deadline for filing an opposition.

//

//

//

ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO STRIKE; DENYING MOTION FOR ADMINISTRATIVE RELIEF

Having received no opposition, the Court granted the NFHA's request for leave to file its brief on September 21, 2017. The Court rejects as baseless Defendants' assertion that they have been prejudiced by the Court's order granting NFHA leave to file its *amicus curiae* brief, especially in light of Defendants' admission that the brief provides no new argument.

**IT IS SO ORDERED.**

Dated: October 30, 2017

_____
EDWARD J. DAVILA
United States District Judge